**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| OverDrive, Inc., a Delaware corporation, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 1:17-cv-165 |
| ) | |
| v. ) | Judge: |
| ) | |
| The Open eBook Forum d/b/a the International ) | **JURY TRIAL DEMANDED** |
| Digital Publishing Forum, a nonprofit corporation ) | |
| formed pursuant to the District of Columbia ) | |
| Non-Profit Corporation Act, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT,
DAMAGES, AND INJUNCTIVE RELIEF**

"I loved reading when I was a kid, partly because I was traveling so much, and there were times where I'd be displaced, I'd be the outsider . . . And so the idea of having these worlds that were portable, that were yours, that you could enter into, was appealing to me." From *President Obama on What Books Mean to Him*, New York Times, January 16, 2017.

It is not hyperbole to suggest that immersive reading was formative to every person who ever made a positive difference in our world.

Plaintiff OverDrive, Inc. ("OverDrive") brings this civil action to safeguard the future of books and reading in a digital ecosystem. OverDrive (and others) invested in the leading e-book industry specification (called "EPUB"), the subject of this copyright infringement action, and licensed its EPUB contributions to The Open eBook Forum d/b/a the International Digital Publishing Forum ("IDPF" or "Defendant"). OverDrive, like others, believed that it was worth investing in reading, literacy, and education. OverDrive trusted IDPF as the steward of that investment.

Now IDPF intends to transfer the future of reading in the digital age to an organization designed instead to promote websites and e-commerce, where reading will be an afterthought and subservient, if it is valued at all. But books are not websites, and the promotion of reading should not be a stepping stone to collecting a reader's credit card information off the page. Books deserve their own format, for books are themselves important. For 16 years, IDPF enjoyed the participation of authors, librarians, publishers, and educators to foster and promote books and immersive reading in the digital age, a goal derived from the fundamental premise that books *are inherently important*, even sacred.

Now the International Digital Publishing Forum has abandoned that mission, and seemingly the entire premise.

Plaintiff OverDrive brings this civil action against defendant IDPF for injunctive relief and for a declaration of judgement to stop IDPF: (1) from infringing by distribution; and (2) actively inducing the World Wide Web Consortium's ("W3C") infringement of United States copyrights authored by OverDrive. These infractions arise from W3C's planned exploitation (through its U.S. host the Massachusetts Institute of Technology ("MIT")) of a work known as the EPUB specification. OverDrive and other authors made substantial copyrighted contributions to the EPUB specification and still own rights in this valuable work.

Pursuant to a non-exclusive license granted to IDPF by OverDrive, IDPF alone had the right to exploit OverDrive's contributions to EPUB. However, induced and convinced by IDPF, MIT now believes it has acquired (or is in the process of acquiring) EPUB as part of a so-called "Membership Exchange" and disposition of assets (the "MIT-IDPF Transaction"), a transaction in its final stages or one that has already closed, notwithstanding that OverDrive has not consented and will not consent to a transfer to MIT or W3C of its contributions to EPUB.

Unless this Court intervenes, MIT as host for W3C and W3C itself will exploit EPUB on a massive scale, including OverDrive's contributions, causing rampant chaos, uncertainty, and litigation in the electronic publishing industry. The disruption will affect millions of consumers who need and want access to electronic publications, as well as the thousands of publishers and technology companies that provide those publications. In light of this real, live, actual, and justiciable controversy, OverDrive asks this Court to make clear OverDrive's rights, on the one hand, and IDPF's, MIT's, and W3C's legal obligations, on the other hand, associated with this star-crossed course of action.

To be clear, OverDrive's claims asserted herein are not that OverDrive is the only or exclusive author of the EPUB specification. OverDrive is a contributor of copyrighted works to EPUB, a collective work reflecting the work product of well over 100 separate authors and contributors, each of whom owns separate rights in and to each of their respective contributions. Similarly-situated parties may seek to join this action or decide to file individual actions.

OverDrive leads this action to protect the sanctity of the book and publishing industry and the rights of authors and copyrights.

For its Complaint against the Defendant, OverDrive alleges as follows:

## THE PARTIES

1. OverDrive is a Delaware corporation with its principal place of business in Cleveland, Ohio. Since 1986, OverDrive has become the leading global platform for eBooks, audiobooks, and other digital media for libraries, schools, government, and retailers worldwide.

2. IDPF is a nonprofit corporation formed pursuant to the District of Columbia Non-Profit Corporation Act that was incubated for many years in Cleveland, Ohio and is presently headquartered in Seattle, Washington.

3. OverDrive was a founding member of IDPF in February 2000 and, until the closing of the MIT-IDPF Transaction is finalized, remains a Member today within the meaning of that term in D.C. Code § 29-401.02(24)(A).

## JURISDICTION AND VENUE

4. This is an action for declaration of infringement of copyrights under the copyright laws of the United States, specifically 17 U.S.C. §§ 101 – 810 (the "Copyright Act").

5. This Court has original subject matter jurisdiction of the copyright law claims asserted herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and pursuant to 28 U.S.C. §§ 1331 and 1338.

6. This Court has personal jurisdiction over the Defendant because the Defendant does business in this judicial district, and because this is a judicial district in which a substantial part of the events giving rise to the claims occurred. IDPF's assets for years existed on servers residing in this judicial district. IDPF has intentionally engaged in acts targeted at this judicial district. IDPF is causing and will continue to cause harm in this judicial district. IDPF has entered into agreements with one or more residents of this State and judicial district. IDPF has purposefully availed itself of the privilege of conducting activities in this State and in this judicial district. Many of the wrongful acts complained of herein are occurring in this State and judicial district.

7. Venue of the within dispute is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND FACTS

8. Defendant IDPF, a 16-year-old nonprofit corporation, is the global trade and standards association for electronic publishing and eBooks.

9. OverDrive has become the leading global platform for eBooks, audiobooks, and other digital media used by schools, public libraries, academic, corporate and government libraries, agencies, and knowledge centers. OverDrive's ambition to start an organization like IDPF is not surprising as IDPF exists (as per its Articles of Incorporation) to create and maintain standards and promote the successful adoption of electronic books, provide a forum for the discussion of issues and technologies related to electronic books, develop, publish and maintain common specifications relating to electronic books and promote successful adoption of these specifications, identify, evaluate and recommend standards created by other bodies related to electronic book related systems and provide a forum for resolution of interoperability issues, and accommodate differences in language, culture, reading, and learning styles.[1]

10. OverDrive incubated IDPF, once known as the Open eBook Forum, at OverDrive's facility for several years. An OverDrive employee coined the name "International Digital Publishing Forum." IDPF's servers were housed at Overdrive within this judicial district at least as early as January 2001 and were still at OverDrive years later. In 2007, some IDPF resources were moved off of OverDrive's hardware, but some remained. IDPF's mail server and web assets were still at OverDrive within this judicial district as early as February 27, 2009. On June 3, 2004, an OverDrive employee initially registered IDPF's domain name for the benefit of IDPF.

11. IDPF's most important and valuable asset is the EPUB specification for electronic books. Developed over 16 years of volunteer work by members and hundreds of thousands of invested member dollars (including of course substantial investments by OverDrive), EPUB's value is in the tens or hundreds of millions of dollars.

---

[1] Articles of Incorporation of Open eBook Forum (Exhibit 1), Article III, pp. 1-2.

12. With IDPF's servers and resources housed at OverDrive's facility within this judicial district, OverDrive was effectively the primary host and publisher of the EPUB specification for many years.

13. IDPF and the EPUB specification have close ties to Northeastern Ohio and this judicial district. In fact, an OverDrive employee in Cleveland, Ohio filed the federal trademark application for EPUB and has maintained it since 2008.

14. The EPUB specification is the most widely supported vendor-independent XML-based (as opposed to PDF) e-book format; that is, it is supported by the largest number of publishers, authors, digital book distributors and vendors, hardware readers, reading and learning apps, libraries, and schools.

15. The EPUB specification necessarily evolved as technology and media evolved. Over the years, Open eBook Publication Structure 1.0, EPUB 2.0, EPUB 2.0.1, and EPUB 3.0 were published. On or about June 26, 2014, IDPF published EPUB 3.0.1, the most recent version of EPUB.

16. Because EPUB is an iterative specification, the most recently published version, eBook Publication Structure EPUB 3.0.1, is built on and essentially constitutes revisions and changes to eBook Publication Structure EPUB 3.0, which in turn was derived from Open eBook Publication Structure 1.0, EPUB 2.0.1, and so on.

17. The EPUB specification is a collective work constituting the licensed copyrightable contributions of OverDrive and other publishing houses, technology companies, retailers, media companies, and other contributors. Over the years OverDrive employees made numerous material contributions to EPUB, which OverDrive licensed to IDPF.

**OVERDRIVE'S COPYRIGHTS**

18.     For 10 years OverDrive's full-time employee, President and CEO Steve Potash, was a volunteer Board Member and President of The Open eBook Forum, now known as the International Digital Publishing Forum (IDPF). Mr. Potash contributed significantly to the conception and design of, as well as participated in drafting and/or revising (along with other employees of OverDrive), the manuscript for specification Open eBook Publication Structure 1.0, the beginning of what is now known as EPUB. OverDrive's full-time employee Alexis Petric-Black, formerly known as Alexis Wiles, contributed significantly to the conception and design of, as well as participated in drafting and/or revising, the manuscript for EPUB 2.0.1. Ms. Petric-Black also contributed significantly to the conception and design of, as well as participated in drafting and/or revising, the manuscripts for EPUB 3.0 and EPUB 3.0.1. In other words, under the work for hire doctrine, OverDrive is an author of material contributions to multiple versions of the EPUB specification.

19.     OverDrive applied for and obtained a Certificate of Copyright Registration issued by the Register of Copyrights for "OverDrive's Contributions to Open eBook Publication Structure 1.0" (the "Copyrighted OverDrive EPUB 1.0 Contributions"). January 5, 2017 is the effective date of registration for the Copyrighted OverDrive EPUB 1.0 Contributions, Registration Number TX 8-282-411. Accordingly, OverDrive is the owner of exclusive rights under copyright with respect to the Copyrighted OverDrive EPUB 1.0 Contributions, including the right to reproduce the Copyrighted OverDrive EPUB 1.0 Contributions, the right to prepare derivative works based upon the Copyrighted OverDrive EPUB 1.0 Contributions, the right to distribute the Copyrighted OverDrive EPUB 1.0 Contributions, and the right to display the Copyrighted OverDrive EPUB 1.0 Contributions. OverDrive also has the exclusive right to sue

unlicensed third parties for past, present or future infringement of the Copyrighted OverDrive EPUB 1.0 Contributions.

20. OverDrive applied for and obtained a Certificate of Copyright Registration issued by the Register of Copyrights for "OverDrive's Contributions to EPUB 2.0.1" (the "Copyrighted OverDrive EPUB 2.0.1 Contributions"). January 5, 2017 is the effective date of registration for the Copyrighted OverDrive EPUB 2.0.1 Contributions, Registration Number TX 8-282-409. Accordingly, OverDrive is the owner of exclusive rights under copyright with respect to the Copyrighted OverDrive EPUB 2.0.1 Contributions, including the right to reproduce the Copyrighted OverDrive EPUB 2.0.1 Contributions, the right to prepare derivative works based upon the Copyrighted OverDrive EPUB 2.0.1 Contributions, the right to distribute the Copyrighted OverDrive EPUB 2.0.1 Contributions, and the right to display the Copyrighted OverDrive EPUB 2.0.1 Contributions. OverDrive also has the exclusive right to sue unlicensed third parties for past, present or future infringement of the Copyrighted OverDrive EPUB 2.0.1 Contributions.

21. OverDrive applied for and obtained a Certificate of Copyright Registration issued by the Register of Copyrights for "OverDrive's Contributions to EPUB 3.0" (the "Copyrighted OverDrive EPUB 3.0 Contributions"). January 5, 2017 is the effective date of registration for the Copyrighted OverDrive EPUB 3.0 Contributions, Registration Number TX 8-282-405. Accordingly, OverDrive is the owner of exclusive rights under copyright with respect to the Copyrighted OverDrive EPUB 3.0 Contributions, including the right to reproduce the Copyrighted OverDrive EPUB 3.0 Contributions, the right to prepare derivative works based upon the Copyrighted OverDrive EPUB 3.0 Contributions, the right to distribute the Copyrighted OverDrive EPUB 3.0 Contributions, and the right to display the Copyrighted OverDrive EPUB

3.0 Contributions. OverDrive also has the exclusive right to sue unlicensed third parties for past, present or future infringement of the Copyrighted OverDrive EPUB 3.0 Contributions.

22. OverDrive applied for and obtained a Certificate of Copyright Registration issued by the Register of Copyrights for "OverDrive's Contributions to EPUB 3.0.1" (the "Copyrighted OverDrive EPUB 3.0.1 Contributions" and, together with the Copyrighted OverDrive EPUB 1.0 Contributions, the Copyrighted OverDrive EPUB 2.0.1 Contributions, and the Copyrighted OverDrive 3.0 Contributions, the "Copyrighted OverDrive EPUB Contributions"). January 5, 2017 is the effective date of registration for the Copyrighted OverDrive EPUB 3.0.1 Contributions, Registration Number TX 8-282-406. Accordingly, OverDrive is the owner of exclusive rights under copyright with respect to the Copyrighted OverDrive EPUB 3.0.1 Contributions, including the right to reproduce the Copyrighted OverDrive EPUB 3.0.1 Contributions, the right to prepare derivative works based upon the Copyrighted OverDrive EPUB 3.0.1 Contributions, the right to distribute the Copyrighted OverDrive EPUB 3.0.1 Contributions, and the right to display the Copyrighted OverDrive EPUB 3.0.1 Contributions. OverDrive also has the exclusive right to sue unlicensed third parties for past, present or future infringement of the Copyrighted OverDrive EPUB 3.0.1 Contributions.

## IDPF'S INTELLECTUAL PROPERTY POLICY

23. Pursuant to IDPF's Intellectual Property Policy for Members (approved by IDPF membership March 5, 2004) (last updated by IDPF's Board of Directors October 13, 2005) (the "IDPF IP Policy"), OverDrive granted to IDPF and only to IDPF a broad, non-exclusive license to exploit the Copyrighted OverDrive EPUB Contributions, as did other IDPF members respecting their contributions to EPUB. Importantly, the IDPF IP Policy states that all copyrights or other intellectual property owned or created by any IDPF member remains the

property of such member.  As a result, OverDrive clearly owns all right, title and interest in and to all of the Copyrighted OverDrive EPUB Contributions, subject to the non-exclusive license OverDrive granted only *to IDPF*.  But now IDPF is going away.

## THE MIT-IDPF TRANSACTION

24. W3C is an international community where member organizations, a full-time staff, and the public work together to develop Web standards.  W3C's mission is to lead the World Wide Web to its full potential by developing protocols and guidelines that ensure the long-term growth of the Web.

25. W3C does not have a typical organization structure, nor is it incorporated.

26. W3C is administered jointly by MIT, the European Research Consortium for Informatics and Mathematics, Keio University, and Beihang University.

27. As W3C's United States host, MIT is responsible for providing W3C's United States headquarters and administering W3C's activities (including membership) in the United States and the Americas.

28. On September 28, 2016, W3C and the IDPF entered into a Memorandum of Understanding (the "MOU") regarding the disposition of IDPF's assets and its absorption into W3C, vis-à-vis MIT.

29. On October 13, 2016, IDPF claimed that its Board approved the Plan of Membership Exchange (the "Plan"), which included the MOU.

30. The Plan was described in the MOU as a two-part transaction:  a "Membership Exchange" under section 29-409.03 of the D.C. Code; and a disposition of assets under section 29-410.02 of the D.C. Code.

31. According to the Plan, first IDPF's cash and intellectual property would be transferred to MIT and then IDPF would wind down its operations and dissolve. Pursuant to the MOU, the transfer purports to include the current EPUB specification, including a new EPUB 3.1 specification. However, this transaction cannot legally occur without a license from each IDPF member or former IDPF member that made contributions to any version of the EPUB specifications. Notwithstanding this, IDPF has represented it will only take *reasonable steps* to procure such licenses. The Plan, which included the MOU, recites that "[t]o secure the necessary intellectual property licensing, IDPF shall take, in good faith, all reasonable steps to obtain signatures on the EPUB Submission from each IDPF member or former IDPF member that made meaningful contributions to any version of EPUB specifications."[2] In other words, IDPF recognizes the licenses are necessary but is determined to press forward without them.

32. MIT cannot acquire EPUB, including the Copyrighted OverDrive EPUB Contributions, merely as a result of IDPF's dissolution, i.e., as a successor-in-interest to IDPF because, first, IDPF will transfer to MIT all rights, title and interest to its intellectual property, including the EPUB specifications 3.0 and 3.1 containing the OverDrive Copyrighted EPUB Contributions. Then at some later date following the transfer of IDPF's intellectual property, IDPF will wind up its operations and ultimately dissolve.

33. Defendant IDPF will remain in existence as a mere "shell" for a limited time, without the ability to license or sublicense any intellectual property. In return for surrendering the valuable EPUB specification and every other asset to MIT (for the benefit of W3C), IDPF will receive nothing, and in return for the acquisition of their membership interests in IDPF, IDPF members may choose among three options that OverDrive maintains offer nothing or virtually nothing in return.

---

[2] MOU, p. 4.

34. Advocating for the interests (including the copyright interests) associated with books, e-books, and their authors and publishers were the principal reasons that IDPF was formed by its members. On the other hand, W3C has openly and publicly touted its interests as advertising, digital billboards, and e-commerce. The Open eBook Forum was created to promote long-form reading, education, and the interests of copyright owners, libraries, authors, and authors' royalties. W3C is interested in "Web publishing" with a click-through ad. The investment that OverDrive made in the IDPF – the *only* reason OverDrive licensed the Copyrighted OverDrive EPUB Contributions to the IDPF – was to further the book and publishing industry. But neither W3C nor MIT is focused on immersive reading. Neither W3C nor MIT has any plans to focus on immersive reading. What will happen to EPUB if the MIT-IDPF Transaction is consummated? Authors, libraries, publishers, educators, and readers of all ages will be harmed. In fact, OverDrive opposed the transaction between Defendants IDPF and MIT. On October 24, 2016, OverDrive filed a Verified Petition for Review of Contested Nonprofit Action and Injunctive Relief in the Superior Court of the District of Columbia (Civil Division) against IDPF. That case was dismissed on narrow jurisdiction grounds.

35. IDPF now claims it has received a sufficient number of member votes to approve the Plan (that included the MOU). However, certain additional key details of the MIT-IDPF Transaction are still not known, details that would purportedly allow, at some undefined point in the future, the transfer of the assets and activities of IDPF (including the Copyrighted OverDrive EPUB Contributions) to MIT.

36. On December 13, 2016, the IDPF Board of Directors called a vote of the IDPF membership to approve EPUB 3.1 as the new current version of EPUB. EPUB 3.1 builds on all previous versions of EPUB and contains Copyrighted OverDrive EPUB Contributions.

37. On November 28, 2016, Bill McCoy, IDPF's Executive Director, delivered an e-mail notice to all IDPF member primary representatives requesting any organization that contributed to the development of EPUB specifications to again sign a "submission authorization" as an element of "finalizing the planned combination of IDPF with W3C." A true and correct copy of the notice sent by Bill McCoy is attached hereto as Exhibit A. Through this "submission authorization" each organization would grant to W3C a perpetual, non-exclusive, royalty-free, worldwide right and license under any of its copyrights respecting its contributions to EPUB to copy, publish, and distribute the contribution under certain W3C licenses. Mr. McCoy's language reiterated what was in the MOU. In other words, Bill McCoy and IDPF are clearly aware (and it is likely that W3C and MIT are also aware) that, prior to exploiting EPUB, MIT and W3C must obtain licenses from each and every organization that contributed to the development of the EPUB specifications.

38. Specifically, as it affects OverDrive, OverDrive has been asked to grant to W3C a perpetual, non-exclusive, royalty-free, worldwide right and license to copy, publish, and distribute OverDrive's intellectual property in the EPUB specification, i.e., the Copyrighted OverDrive EPUB Contributions. OverDrive has refused to execute such a license, either with W3C or with MIT.

39. On information and belief, other contributors have also refused to execute such licenses.

40. The MIT-IDPF Transaction cannot be legally consummated. Neither MIT nor W3C has the right to exploit EPUB 3.1 or any version of EPUB utilizing OverDrive's copyrights without licenses from all contributors. After all, the upshot of the MIT-IDPF Transaction is for W3C to acquire IDPF's intellectual property, i.e., EPUB, vis-à-vis MIT. But how can IDPF

transfer EPUB to MIT without the consent of <u>all</u> of the owners of EPUB? The answer is obvious: *IDPF cannot*.

41. Notwithstanding the foregoing, on December 22, 2016, IDPF announced that, "as part of work towards implementing the plan to combine IDPF with W3C, proposed initial charters have been drafted for the anticipated new W3C Publishing Business Group and W3C EPUB 3 Community Group."

42. On January 18, 2017, IDPF held a meeting and webinar to update IDPF members and the publishing community about the planned MIT-IDPF Transaction.

43. The MIT-IDPF Transaction, including MIT's plans to exploit EPUB as host for W3C, is on a fast-track towards finalization and execution with or without intellectual property consents from OverDrive (on information and belief the transfer of IDPF's assets to MIT under the terms of the MOU will likely occur on or before January 28, 2017); in fact the transaction may have already been finalized.

## **THE CONTROVERSY**

44. IDPF is well aware that OverDrive and other organizations own copyright rights in their respective contributions to EPUB. IDPF is also well aware that the MIT-IDPF Transaction as it pertains to EPUB cannot be consummated without each of these organizations making a "necessary" (IDPF's own characterization) grant to W3C respecting its particular contributions to the EPUB specification. In fact, IDPF has asked each organization to grant such a license to W3C. However, it is clear that W3C has not been granted and will not be granted all of those licenses. That has not stopped IDPF from distributing or preparing to distribute EPUB to MIT and W3C and from causing the MIT-IDPF Transaction to close, a transaction that calls

for the mass exploitation of EPUB by W3C whether or not IDPF, MIT, and W3C receive requisite permissions and licenses from OverDrive and others.

45. Unless enjoined by this Court, MIT and W3C will most assuredly exploit the EPUB specification, including the Copyrighted OverDrive EPUB Contributions and other contributors' works, willfully violating OverDrive's and other authors' rights. On information and belief, distribution of EPUB by W3C and/or MIT has commenced or is imminent. On more than one occasion IDPF has communicated its awareness of OverDrive's and others' rights in EPUB but, at the end of the day, IDPF willfully disregards those rights to get this deal done. OverDrive now respectfully asks the Court to intercede and clarify the parties' legal rights and obligations associated with this ill-fated course of action.

## COUNT I

### (Declaratory Judgment of Copyright Infringement)

46. OverDrive incorporates by reference paragraphs 1 through 45 of this Complaint as if specifically set forth herein.

47. This is a claim for declaratory judgment brought against the Defendants pursuant to 28 U.S.C. § 2201, arising under the Copyright Act.

48. There presently exists a real, live, actual and justiciable controversy between OverDrive and IDPF as to MIT's right, on behalf of itself and/or on behalf of W3C, to exploit the EPUB specification including the Copyrighted OverDrive EPUB Contributions. There also presently exists a real, live, actual and justiciable controversy between OverDrive and IDPF concerning whether MIT's exploitation of the Copyrighted OverDrive EPUB Contributions in connection with W3C constitutes copyright infringement, and whether IDPF is a contributory infringer of OverDrive's copyrights inasmuch as IDPF, with knowledge of the contemplated

infringing activity, actively induced, caused, and materially contributed to MIT's infringing conduct as host for W3C.

49. Upon the closing of the MIT-IDPF Transaction, a tremendous amount of copyright infringement using the EPUB specification will take place every day. These infringements will occur whenever any user of the EPUB specification, i.e., any publisher or author or other content creator, without authorization of OverDrive and other copyright owners who contributed to the EPUB specification and who have not granted W3C vis-à-vis MIT an express license, copies and/or otherwise incorporates the EPUB specification in content and in turn distributes that content through hundreds of channels. Every day such content incorporating the EPUB specification will be viewed online by hundreds of millions of end users and consumers using many different applications and reading devices.

50. IDPF is distributing and/or intends to distribute to MIT and, at all relevant times, has engaged and continues to engage in the business of knowingly and systematically facilitating, materially contributing to, encouraging and actively inducing the above-described reproductions and/or distributions of the EPUB specification, infringing OverDrive's copyrights and exclusive rights under copyright in the EPUB specification.

51. IDPF has engaged in direct infringement of OverDrive's rights by distributing EPUB, including the Copyrighted OverDrive EPUB Contributions, to MIT and/or W3C for further exploitation without authorization from OverDrive.

52. In addition to its direct infringement, through active participation in orchestrating the MID-IDPF Transaction and its commitment to close that transaction knowing full-well that W3C needs a license from each IDPF member or former IDPF member that made meaningful

contributions to any version of EPUB specifications,[3] IDPF is contributorily liable for the vast number of copyright infringements, including infringements of the OverDrive Copyrighted EPUB Contributions, that will follow.

53. Pursuant to 28 U.S.C. § 2201, OverDrive is entitled to a declaration that MIT's and/or W3C's distribution of the EPUB specification (and specifically the Copyrighted OverDrive EPUB Contributions) is an infringement of the Copyrighted OverDrive EPUB Contributions in violation of the Copyright Act.

54. Pursuant to 28 U.S.C. § 2201, OverDrive is entitled to a declaration that MIT's exploitation of the EPUB specification (and specifically the Copyrighted OverDrive EPUB Contributions), once commenced by W3C and MIT as host for W3C, constitutes contributory infringement on defendant IDPF's part inasmuch as IDPF, with knowledge of the infringing activity, actively induced, caused, facilitated, and materially contributed to such activity.

55. Pursuant to 28 U.S.C. § 2201, a declaration of rights from the Court is a bona fide necessity for MIT and W3C to carry on with their businesses in a lawful manner.

## PRAYER FOR RELIEF

**WHEREFORE**, OverDrive prays for relief as follows:

(A) That this Court order, adjudge and decree that W3C's and/or MIT's exploitation of the Copyrighted OverDrive EPUB Contributions, or any derivative thereof, constitutes an infringement of OverDrive's federal copyrights in the Copyrighted OverDrive EPUB Contributions, and that IDPF actively induced and materially contributed to such infringement;

(B) That a declaratory judgment be issued that neither MIT nor W3C is entitled to use the Copyrighted OverDrive EPUB Contributions without OverDrive's consent;

---

[3] MOU, p. 4.

(C) That, pursuant to 17 U.S.C. § 504(b), the Court award OverDrive its damages and Defendants' profits in such amount as may be found as a result of Defendants' copyright infringement; alternatively, pursuant to 17 U.S.C. § 504(c), if it can be shown that the infringement complained of herein did not commence until on or after January 5, 2017, the effective date of registration for each of the Copyrighted OverDrive EPUB Contributions, for maximum statutory damages in the amount of $150,000 with respect to the Copyrighted OverDrive EPUB 1.0 Contributions, for maximum statutory damages in the amount of $150,000 with respect to the Copyrighted OverDrive EPUB 2.0 Contributions, for maximum statutory damages in the amount of $150,000 with respect to the Copyrighted OverDrive EPUB 3.0 Contributions, and for maximum statutory damages in the amount of $150,000 with respect to the Copyrighted OverDrive EPUB 3.0.1 Contributions (totaling $600,000), or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c);

(D) That, pursuant to 17 U.S.C. § 502, the Court permanently enjoin Defendant, its agents, employees, attorneys and all persons in active concert or participation with them, including, without limitation MIT and W3C, from distributing or otherwise exploiting the EPUB specification containing the Copyrighted OverDrive EPUB Contributions;

(E) That, pursuant to 17 U.S.C. § 505, if it can be shown that the infringement complained of herein did not commence until on or after January 5, 2017, the effective date of registration for each of the Copyrighted OverDrive EPUB Contributions, the Court award OverDrive its attorneys' fees and the full costs of this action and interest to OverDrive; and

(F) That the Court grant such other and further relief as is just and proper.

January 24, 2017                                    Respectfully submitted,


    */s/ Mark E. Avsec*
Mark E. Avsec (0064472)
Andrew G. Fiorella (0077005)
**BENESCH, FRIEDLANDER,**
  **COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland OH 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
mavsec@beneschlaw.com
afiorella@beneschlaw.com

*Attorneys for Plaintiff*
*OverDrive, Inc.*

## **JURY DEMAND**

Plaintiff OverDrive, Inc. demands a jury trial pursuant to Fed. R. Civ. P. 38 as to all issues so triable in this action.

*/s/ Mark E. Avsec*
*Attorney for Plaintiff*
*OverDrive, Inc.*
