UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OverDrive, Inc., | ) | Case No. 1:17-CV-165 |
| | ) | |
| Plaintiff, | ) | Judge Solomon Oliver, Jr |
| | ) | |
| vs. | ) | |
| | ) | |
| The Open eBook Forum d/b/a the | ) | |
| International Digital Publishing Forum, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum in Support of The Open
eBook Forum's Motion For Judgment on the Pleadings**

The Open eBook Forum d/b/a the International Digital Publishing Forum ("IDPF")

submits this memorandum in support of its motion for judgment on the pleadings pursuant

to Federal Rule of Civil Procedure 12(c).

## I.  Introduction

Having previously failed to convince a prior court to disregard the will of IDPF's board

of directors and its membership,[1] this case represents OverDrive's second attempt to stymie

IDPF's legitimate combination with the World Wide Web Consortium (or, "W3C") through a

membership exchange with its U.S. host, Massachusetts Institute of Technology ("MIT")

(referred to by OverDrive in its complaint as the "MIT-IDPF Transaction").

Rhetorically casting itself as the noble defender of the digital reading public, OverDrive

first sued IDPF in Washington, D.C. Superior Court last October and asked the court to block

IDPF from consummating its combination with W3C. The court, however, denied OverDrive's

---

[1] *OverDrive, Inc. v. The Open eBook Forum d/b/a the International Digital Publishing Forum,*
Washington D.C. Superior Court Case No. 2016 CABSLD 7768.

motion and dismissed its complaint. (Exh. A, January 6, 2017 Order at 6.[2]) Less than three weeks later, OverDrive brought this second action to indirectly frustrate IDPF's combination with W3C by tactically asserting its narrow (and only recently registered) copyrights to hold hostage IDPF's EPUB e-book specification. OverDrive's second legal attack should fare no better than its first.

Irrespective of whether OverDrive truly believes that stopping the MIT-IDPF Transaction is necessary to "safeguard the future of books and reading in a digital ecosystem" (Cmplt. at 1) or it merely wants to defend its market position as "the leading global platform for eBooks, audiobooks, and other digital media for libraries, schools, government, and retailers worldwide" (*id.* at ¶ 2), OverDrive's slender copyrights are insufficient to support the weight of its broader ambitions.[3]

More than a decade before OverDrive set out to block the MIT-IDPF Transaction, it contractually agreed that IDPF owns the copyrights in EPUB as a whole, and OverDrive concedes in its complaint that its own copyrights cover only its discrete contributions to EPUB (whatever those unidentified contributions may be). Based on these undisputed—and undisputable—facts, IDPF holds a statutory privilege under Section 201(c) of the Copyright

---

[2] The Court may take judicial notice of the court's ruling as a matter of public record. *See* Fed. R. Evid. 201; *see also Granader v. Public Bank,* 417 F.2d 75, 82–83 (6th Cir. 1969) (federal court may take judicial notice of proceedings before other federal and state courts).

[3] Even if that were not so, OverDrive's strategy would be self-defeating. According to OverDrive, there are more than 100 separate authors and contributors to EPUB. (Cmplt. at 3.) If OverDrive's claim were to succeed, each of those contributors—and particularly the handful that did not execute the back-up license to MIT that IDPF requested out of an abundance of caution—could separately hold EPUB hostage from both IDPF <u>and</u> OverDrive. That would almost certainly be fatal to EPUB as a viable open standard, and a win by OverDrive further would undermine the foundation upon which countless other open standards have been developed and imperil the businesses and investments that depend upon them.

Act to distribute OverDrive's contributions that renders OverDrive's infringement allegations a nullity. Moreover, OverDrive concedes that it previously granted IDPF a broad perpetual license under the copyrights it now asserts. That license, which OverDrive granted simultaneous with its agreement that IDPF owns the overall EPUB copyrights, likewise constitutes a complete defense to OverDrive's claim because it expressly permits IDPF to distribute, sublicense and assign EPUB to MIT. OverDrive therefore has not stated a plausible claim for relief and the Court should enter judgment in IDPF's favor.

## II.  Factual Background[4]

IDPF is a nonprofit trade and standards organization for the digital publishing industry that develops and promotes electronic publishing and content consumption. (Cmplt. ¶ 8.) Among other things, IDPF developed and has maintained EPUB, which enables the creation and transport of digital books and other content as digital publications that are interoperable between disparate EPUB-compliant reading devices and applications (including, notably, OverDrive's OverDrive Read browser-based eBook reader and apps). (*Id.* at ¶¶ 8, 11, 14-16.)

Starting with its initial Open eBook Publication Structure, IDPF with its members developed and has evolved EPUB as a freely-available open specification. (Cmplt. ¶¶ 9, 14-22.) Essential to that collaborative development process, IDPF's Intellectual Property Policy for Members (the "IP Policy") delineates IDPF's and its members' rights with respect to EPUB. (*Id.* at 2, ¶¶ 23; Exh. B,[5] IP Policy.) Under the IP Policy, OverDrive and IDPF's other members agreed that "IDPF shall be the sole owner of the copyright in the [EPUB] Specification(s)."

---

[4] The facts recited in the "Factual Background" section are taken from OverDrive's complaint (ECF # 1), and are taken as true for purposes of this motion only.

[5] Although not attached to OverDrive's complaint, the Court may consider the IP Policy because it is referred to in OverDrive's complaint and is integral to its claim.

(Exh. B, IP Policy § 3.) Each of IDPF's members— including OverDrive—also granted IDPF "a worldwide, perpetual, irrevocable, non-exclusive, sub-licensable license under" their respective copyrights in anything they contributed to EPUB (the "IP Policy License"). (Exh. B, IP Policy § 3.) OverDrive agreed to this ownership structure "[t]o ensure that [the EPUB] Specifications can be made available to all interested parties without competing copyright claims in the document itself interfering with its publication and distribution." (*Id.*)

In 2016, IDPF announced that it was exploring a combination with the World Wide Web Consortium ("W3C"), an international standards-setting body for the world wide web. (Cmplt. at 2-3 & ¶¶ 24-30.) W3C is an unincorporated joint collaborative project between four major educational institutions: MIT in the United States, the European Research Consortium for Informatics and Mathematics in France, Keio University in Japan, and Beihang University in China. (*Id.* at ¶¶ 26-27.) After soliciting comments from its membership and holding open meetings, IDPF on September 28, 2016, entered into a memorandum of understanding with MIT regarding the disposition of IDPF's assets and the combination of its membership with W3C's. (*Id.* at ¶¶ 28.) On October 13, 2016, IDPF's board of directors approved the proposed plan to combine with W3C, after which a majority of IDPF's membership voted to approve the transaction. (*Id.* at ¶¶ 29, 35.)

From the time it was announced last year, OverDrive's founder and chief executive officer Steve Potash has been adamantly and vocally against IDPF's combination with W3C. (*See, e.g.,* Cmplt. at 1-3 & ¶¶ 18, 34, 38.) Mr. Potash was part of the Open eBook Authoring Group that initially developed the Open eBook standard, and he previously served as a board member and president of IDPF. (*Id.* at ¶ 18.) Putting Mr. Potash's objections into action,

OverDrive on October 24, 2016, sued IDPF in Washington, D.C., Superior Court and moved to immediately enjoin the MIT-IDPF Transaction, which at that time had been approved by IDPF's board of directors but not its membership. (*Id.* at ¶ 34-35; Exh. A; Dec. 5, 2016 Order at 5-6.) Following a December 5, 2016, hearing, the Washington, D.C. Superior Court denied OverDrive's injunction motion and dismissed its complaint on January 6, 2017. (*Id.* at ¶ 34; Exh. A, Jan. 6, 2017 Order at 7.)

Having fallen short in its first lawsuit, OverDrive filed this case against IDPF a few weeks later, hoping to monkey-wrench the MIT-IDPF Transaction. (ECF # 1.) OverDrive now asks this Court to declare that IDPF's "distribution" of EPUB to MIT constitutes direct infringement of OverDrive's copyrights and that IDPF is actively inducing MIT to directly infringe OverDrive's copyrights. (Cmplt. at 2 & ¶¶ 51-52.) Despite having not affirmatively pled infringement, OverDrive also requests injunctive relief that, if allowed, effectively would cripple the MIT-IDPF Transaction.[6] (*Id.* at 3, 17-18 & ¶¶ 17-22, 44-45, 48, 51-52.)

## III.  <u>Law and Argument</u>

With the pleadings now closed, the Court should grant IDPF's motion and enter judgment in IDPF's favor and against OverDrive for two reasons. First, because IDPF indisputably owns the copyrights in EPUB as a whole, IDPF's distribution of OverDrive's contributions as an integral part of EPUB is statutorily privileged under Section 201(c) of the Copyright Act. Second, the IP Policy License that OverDrive granted to IDPF constitutes a complete defense to OverDrive's copyright infringement allegations.

---

[6] A declaratory judgment does not carry the coercive power of an injunction. *See Steffel v. Thompson,* 415 U.S. 452, 467-472 (1974) (distinguishing declaratory and injunctive relief and noting that, unlike injunctions, declaratory judgments are persuasive, not coercive).

A. **Standard For Granting a Motion for Judgment on the Pleadings**

Entry of judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate where no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007). Motions for judgment on the pleadings are subject to the same standard as motions to dismiss under Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Judgment on the pleadings therefore should be granted where, despite construing the complaint in light most favorable to the plaintiff and accepting all factual allegations as true, the complaint does not state a plausible claim for relief. *See id*.

Ordinarily, "matters outside the pleadings may not be considered … unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *In re Fair Fin. Co.*, 834 F.3d 651, 656 (6th Cir. 2016) (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner*, 108 F.3d at 89. The Court therefore may properly consider and rely upon the full IP Policy attached as Exhibit B in ruling on this motion because it was specifically identified and referenced in OverDrive's complaint and is integral to OverDrive's claim.

OverDrive only asserts a single claim, for declaratory judgment, under which it posits that IDPF has directly and contributorially infringed OverDrive's copyrights by entering into the MIT-IDPF Transaction and "distributing" EPUB to MIT. The Court should grant this motion and enter judgment in IDPF's favor because IDPF's distribution of EPUB to MIT is statutorily privileged and because the IP Policy License constitutes a complete defense to OverDrive's copyright infringement allegations.

**B.  IDPF Is Entitled To Judgment In Its Favor Because Its Reproduction and Distribution of EPUB Is Privileged**

To state a claim for copyright infringement based on IDPF's distribution of EPUB, OverDrive's must establish (1) ownership of valid copyrights in the works at issue and (2) that IDPF distributed protectable elements of those works. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). OverDrive attempts to satisfy the first element by asserting that EPUB constitutes a "collective work" such that it independently owns copyrights in its alleged (but unidentified) discrete "contributions" to EPUB. Accepting as true OverDrive's averments,[7] IDPF is entitled to judgment as a matter of law because, as the acknowledged collective-work owner, IDPF's distribution of EPUB, inclusive of OverDrive's contributions, is statutorily privileged under Section 201(c) of the Copyright Act.

A "collective work" is "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves,

---

[7] While OverDrive's averment on this issue must be taken as true for purposes of this motion, EPUB more likely constitutes a "joint work," which the Copyright Act defines as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. If so, then OverDrive's claim fails for the separate and additional reason that, at worst, IDPF, OverDrive and all other contributors would be joint co-owners of EPUB. *See* 17 U.S.C. § 201(a).

are assembled into a collective whole." 17 U.S.C. § 101. Two classes of copyrights subsist with respect to collective works: "[c]opyright in each separate contribution to a collective work" and "copyright in the collective work as a whole." *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 496 (2001) (quoting 17 U.S.C. § 201(c)). Under Section 201(c), the copyright in an individual contribution to a collective work vests with the author of that contribution. *Id.* Separately, the copyright in the collective work as a whole vests in the collective author. *See, e.g., Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 358 (1991) (copyright in "compilation," a type of collective work, extends to compiler's selection, coordination and arrangement of compiled works). Speaking directly to the issue at hand, Section 201(c) grants the collective work owner the "privilege" of reproducing and distributing the individual contributions as a part of the collective work whole, as follows:

> In the absence of an express transfer of the copyright or any rights under it, the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular work, any revision to that collective work, and any later collective work in the same series.

17 U.S.C. § 201(c). The owner of a collective work "is thus privileged to reproduce or distribute" contributions to the collective work as a part of the collective work as a whole "absent a contract otherwise providing." *Tasini,* 533 U.S. at 496.

Consistent with Section 201(c), OverDrive's copyrights in its alleged contributions are separate and distinct from IDPF's copyrights to EPUB as a whole. That distinction is dispositive because OverDrive (as the "Member") expressly agreed in Section 3 of the IP Policy that IDPF alone is the sole owner of the EPUB copyrights, as follows:

> To ensure that Specifications can be made available to all interested parties without competing copyright claims in the document itself interfering with its

publication and distribution, Member agrees that IDPF shall be the sole owner of the copyright in the Specification(s).

(Exh. B, IP Policy § 3.) Based on OverDrive's acknowledgement of, and its agreement to, IDPF's "sole" ownership of the EPUB, IDPF's distribution of EPUB to MIT is statutorily privileged. *See* 17 U.S.C. § 201(c). IDPF's distribution of EPUB therefore cannot constitute direct infringement of OverDrive's narrow copyrights in its alleged contributions or be the basis for IDPF to be held contributorily liable for any third-party direct infringement. IDPF's privileged distribution of EPUB to MIT also cannot constitute the predicate for OverDrive's contributory infringement claim for the additional reason that, under 17 U.S.C. § 201(d), IDPF's Section 201(c) privileges are divisible and freely transferrable. *See Faulkner v. National Geographic Enterprises Inc.,* 409 F.3d 26, 39-40 (2d Cir. 2005) (affirming summary judgment that section 201(c) defeats both direct and contributory infringement claims and that owner of collective work copyright may transfer 201(c) privileges under 17 U.S.C. § 201(d)).

Accordingly, IDPF's statutory immunity under Section 201(c) precludes OverDrive from stating any plausible claim against IDPF for copyright infringement, and the Court should enter judgment in IDPF's favor on OverDrive's single claim for declaratory relief.

### C.  IDPF Is Entitled To Judgment In Its Favor Because OverDrive Licensed IDPF To Distribute EPUB To MIT and W3C

The Court also should enter judgment in IDPF's favor because OverDrive previously granted IDPF a perpetual and irrevocable license (with right of sublicense) to engage in the very conduct about which OverDrive now complains that constitutes a complete defense to OverDrive's infringement allegations.

"[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute … is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984). Accordingly, "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir.1998); *see also, Thomas M. Gilbert Architects, P.C. v. Accent Builders And Developers, LLC*, 377 Fed. Appx. 303, 306-07 (4th Cir. 2010) (copyright license constitutes promise to not sue licensee for engaging in conduct that otherwise would constitute infringement). Because OverDrive admittedly granted IDPF a broad license under its copyrights in its contributions to EPUB under the IP Policy (*see* Cmplt. ¶¶ 23, 34), the burden falls on OverDrive to establish that IDPF's distribution of EPUB to MIT and W3C was <u>not</u> authorized under the IP Policy License. *See Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) ("[I]n cases where only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized."). OverDrive cannot carry that burden.

OverDrive waived its right to sue IDPF for copyright infringement with respect to EPUB by granting the IP Policy License, which it describes as "a broad, non-exclusive license to exploit the Copyrighted OverDrive EPUB Contributions[.]" (Cmplt. ¶ 23.) The IP Policy License, which OverDrive (as "Member") granted under Section 3 of the IP Policy, provides:

> Member hereby grants to the IDPF a worldwide, perpetual, irrevocable, non-exclusive, sub-licensable license under any copyrights in Members' and Representatives' Contributions included in all Specifications to reproduce, adapt, distribute, perform, display, and create derivative works of such Contributions in connection with the Specification (including any successor thereof); provided, however, that the license granted herein does not grant any rights with respect to any underlying software or other technologies.

(Exh. B, IP Policy § 3.) OverDrive thus authorized IDPF, in writing, to "distribute" OverDrive's contributions to EPUB on a worldwide, perpetual, irrevocable, non-exclusive and sub-licensable basis. (*Id.*) IDPF's alleged "distribution" of OverDrive's contributions to MIT as an integral part of EPUB thus falls squarely within the clear and unambiguous scope of the IP Policy License. Any such distribution therefore was authorized by OverDrive, so it cannot constitute direct or contributory copyright infringement. *See Sony*, 464 U.S. at 433.

OverDrive's infringement allegations also fail due based on the IP Policy License because OverDrive has not identified any unauthorized post-distribution action by MIT or W3C that could constitute a direct infringement for which IDPF somehow could be contributorily liable. To state a claim for contributory infringement, OverDrive must establish that MIT has directly infringed its asserted copyrights and that IDPF intentionally induced or encouraged that direct infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). OverDrive cannot, for at least three independently-sufficient reasons.

First, OverDrive contends that MIT and W3C will directly infringe OverDrive's copyrights whenever a third party "copies and/or otherwise incorporates the EPUB specification in content and in turn distributes that content through hundreds of channels." (Cmplt. ¶ 49.) The IP Policy License, however, expressly grants IDPF (and, in turn, its sublicensees) the right to grant sublicenses. (Exh. B, IP Policy § 3.) Any distribution of EPUB to MIT therefore carries with it a co-equal sublicense to "reproduce, adapt, distribute, perform, display and create derivative works of" OverDrive's contributions to EPUB. (*Id.*) As a result, all down-stream distributors and users of EPUB are in vertical privity with IDPF under the IP Policy License. OverDrive thus cannot show that IDPF induced or encouraged any down-

stream direct infringement by MIT or anyone else in privity with it because any otherwise-infringing use of OverDrive's contribution to EPUB falls within the perpetual and fully-sublicensable IP Policy License.

Second, OverDrive cannot establish contributory infringement because IDPF is legally entitled to assign the IP Policy, including the IP Policy License granted under Section 3, to MIT. Under controlling Washington, D.C. law,[8] "contractual rights are presumptively assignable, and that presumption cannot be overcome unless a contract contains 'clear, unambiguous language' prohibiting an assignment." *Metroil, Inc. v. ExxonMobil Oil Corp.*, 724 F. Supp. 2d 70, 80 (D.D.C. 2010) (quoting *Peterson v. D.C. Lottery & Charitable Games Control Bd.*, 673 A.2d 664, 667 (D.C. 1996) (internal quotation omitted). While the IP Policy prohibits assignments by "Members" and their "Affiliates" without IDPF's prior written consent, it does not include any restriction on IDPF assigning its license rights to a third party. (Exh. B, IP Policy § 12.3.) Accordingly, IDPF may freely assign the IP Policy to MIT as part of the MIT-IDPF Transaction such that MIT stands in IDPF's shoes with respect to the IP Policy License and OverDrive's contributions to EPUB. *See Flack v. Laster,* 417 A.2d 393, 400 (D.C. 1980) (assignee stands in shoes of assignor). MIT accordingly has no prospective copyright infringement liability to OverDrive for which OverDrive could seek to hold IDPF contributorily liable.

Third, OverDrive's contributory infringement contention conflates the difference between EPUB and third-party content that has been formatted according to the EPUB specification. EPUB is a "vendor-independent XML-based (as opposed to PDF) e-book

---

[8] Section 12.2 of the IP Policy provides: "This IP Policy shall be governed by the laws of the District of Columbia (USA), excluding its choice of law rules."

format[.]" (Cmplt. ¶ 14; emphasis added.) As the U.S. District Court for the Southern District of New York has recognized, EPUB, like the portable document format (PDF) specification, defines a way of formatting content that is independent of the content itself. *See Peter Mayer Publishers, Inc. v. Shilovskaya,* 11 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2014) (holding that formatting copyrighted work according to EPUB specification does not create new or derivative work). Formatting third-party content consistent with the EPUB specification therefore does not copy or distribute the EPUB specification itself, so formatting content consistent with EPUB cannot constitute infringement of OverDrive's contributions. That is particularly true considering OverDrive's stated reason for its written agreement that IDPF owns EPUB, namely: "[t]o ensure that [EPUB] can be made available to all interested parties without competing copyright claims in the document itself interfering with its publication and distribution[.]" (Exh. B, IP Policy § 3; emphasis added.) A further license from OverDrive therefore is not needed for a third party to access EPUB or use the specification it defines to format its content for digital publication. Indeed, that OverDrive would contend that such a license is needed runs counter to the idea of EPUB as an open specification. (*See* Cmplt. ¶ 9.)

Accordingly, OverDrive cannot carry its burden of establishing that IDPF's distribution of EPUB to MIT was unauthorized under the IP Policy License or that IDPF has intentionally induced or encouraged MIT or anyone else to engage in any unauthorized direct infringement that could constitute copyright infringement for which IDPF could be contributorily liable. The Court therefore should enter judgment in IDPF's favor on OverDrive's single claim, for declaratory relief.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the Court should grant IDPF's motion and enter judgment in its favor on the sole count asserted by OverDrive in its complaint.


Respectfully submitted,

Dated: April 28, 2017                       /s/ David T. Movius
                                      David T. Movius (0070132)
                                      *dmovius@mcdonaldhopkins.com*
                                      Mark Guinto (0089320)
                                      *mguinto@mcdonaldhopkins.com*
                                      MCDONALD HOPKINS LLC
                                      600 Superior Avenue, East, Ste. 2100
                                      Cleveland, Ohio 44114
                                      t 216.348.5400 │ f 216.348.5474

                                      *Attorneys for Open eBook Forum d/b/a*
                                      *International Digital Publishing Forum*

## **<u>Certificate Of Service</u>**

I hereby certify that, on April 28, 2017, a copy of the foregoing was filed electronically, and that a copy of the foregoing is being served by email on all parties indicated on the electronic filing receipt.

<u>        /s/ David T. Movius                </u>
*One of the Attorneys for*
*Attorneys for Open eBook Forum*
*d/b/a International Digital Publishing Forum*