EXHIBIT A

**International Digital Publishing Forum (IDPF)**
**Intellectual Property Policy for Members**
**(approved by IDPF membership March 5, 2004)**
**(last updated by Board of Directors October 13, 2005)**

1.    Intellectual property rights of the Members

1.1    Except as otherwise provided in this IP Policy, all patents, copyrights or other intellectual property owned or created by any Member shall remain the property of that Member. Such ownership shall not be affected in any way by the Member's participation in IDPF, unless the Member specifically agrees to otherwise.

1.2    Intellectual property rights of IDPF

Through its activities, IDPF may generate protectable intellectual property rights.

1.3    IDPF's Publications

IDPF may publish documents to promote its objectives and purposes.  Members or representatives may be cited as co-authors or co-contributors when appropriate.  The use of any Member's name, trademarks or trade names by IDPF or use of the same by another Member in the course of describing IDPF's work is prohibited without prior written consent of the concerned Member, even after Member's resignation, exclusion or expulsion.

1.4    Other Property Rights

In the event of the dissolution of IDPF and liquidation of the corporation, the assets remaining from the liquidation shall not be distributed among the Members or their representatives in proportion to their contribution but shall be allocated to a not-for-profit purpose, the Members expressly waiving any payment on the net assets of liquidation.

1.5    Definitions.  In addition to the terms that may be defined elsewhere in this IP Policy, the following terms, when used herein, shall have the following meanings:

1.5.1    "Adopter" means a person or entity that implements a Specification (in whole or in part).

1.5.2    "Affiliate" means an entity that directly or indirectly controls, is controlled by, or is under direct control with, a Member. Control for purposes of this definition shall mean direct or indirect beneficial ownership of more than fifty percent of the voting stock, or decision-making authority in the event there is no voting stock, in the entity.

EXHIBIT A

1.5.3    "Call" or "Calling" of an Intermediate Notice Period or a Final Notice Period shall have the meaning as set forth in Section 2.3.1, and Section 2.3.2, respectively.

1.5.4    "Contribution" means any data or information contributed by a Member in the development of a Specification which is ultimately incorporated into such Specification.

1.5.5    "Draft Specification" means a Specification that is in the Draft Document stage as contemplated by the Policies and Procedures.

1.5.6    "Disclosure Statement(s)" shall have the meaning as set forth in Section 2.4 below.

1.5.7    "Essential Claims" means claims of a patent or patent applications, within the Scope (as such term is defined below), other than design patents and design registrations, that are: (i) owned or controlled by a Member or its Affiliates now or at any future time; and (ii) necessarily infringed by those portions of an implementation of the applicable Specification which are within the Scope, where such infringement could not have been avoided by another technically reasonable non-infringing alternative for implementing such Specification.

Notwithstanding the foregoing, "Essential Claims" does not include any claims: (w) that read solely on an optional implementation example included in such Specification; (x) other than those set forth above, even if contained in the same patent as Essential Claims; or (y) that, if licensed, would require a payment of royalties by the licensor to unaffiliated third parties.

Also notwithstanding the foregoing, "Essential Claims" does not include claims that cover (a) any enabling technologies that may be necessary to make or use any product or portion thereof that complies with such Specification, but are not themselves expressly set forth in such Specification (e.g., semiconductor manufacturing technology, compiler technology, object oriented technology, basic operating system technology, application programming interfaces, etc.); (b) the implementation of other published specifications developed elsewhere but referred to in the body of such Specification; (c) any portions of any product and any combinations thereof the purpose or function of which is not required for compliance with such Specification,; and (d) any software code set out in such Specification for purposes of illustration, sample implementation, or reference.

1.5.8    "Final Notice Period" means a period of forty five (45) calendar days following the day the IDPF Secretary sends the notice set forth in Section 2.5 below to Member's designated Representative, or such longer period as established by the Board of Directors, that the Proposed Specification will be delivered to the Members (i) as the basis, during such period, for the Members'

Disclosure Statements, if any, as contemplated by Section 2.4 , and Licensing Statement, if any, as contemplated by Section 2.5; and (ii) for any other applicable vote as contemplated by the Policies and Procedures.

1.5.9  "Intermediate Notice Period" means a period of forty-five (45) calendar days following the day the IDPF Secretary sends the notice set forth in Section 2.5 below to Member's designated Representative, or such longer period as established by the Board of Directors, that Review Documentation will be delivered to Members (i) as the basis, during such period, for Members' Disclosure Statements, if any, as contemplated by Sections 2.4, and Licensing Statement, if any, as contemplated by Section 2.5; and (ii) for any other applicable vote as contemplated by the Policies and Procedures.

1.5.10  "IP Policy" or "these Policies" means this "International Digital Publishing Forum (IDPF) Intellectual Property Policy for Members" document.

1.5.11  "Licensing Statement(s)" shall have the meaning as set forth in Section 2.5 below.

1.5.12  "Member" means an entity or person that has executed a Membership Agreement with the IDPF and includes all Members as contemplated by the Policies and Procedures.

1.5.13  "Membership Agreement" shall mean a form of membership agreement approved by the Board of Directors for execution by Members.

1.5.14  "Notice Period(s)" means the Intermediate  Notice Periods and Final Notice Period.

1.5.15  "Objective Review Period Criteria" means that the applicable Review Documentation for a particular Notice Period has sufficient description and identification of methods and processes to enable Members to address the following during the applicable Notice Period: (a) properly evaluate their patents (both registered patents and patent applications); (b) give a meaningful patent Disclosure Statement; and (c) properly evaluate and declare their Licensing Statement.

1.5.16  "IDPF" means the International Digital Publishing Forum, a non-profit corporation organized under the laws of the District of Columbia.

1.5.17  "Policies and Procedures" means the IDPF's Policies and Procedures document.

1.5.18  "Proposed Specification" means a Specification that is in the Proposed Document stage as contemplated by the Policies and Procedures.

EXHIBIT A

1.5.19 "Recommended  Specification" means a Specification that is in the Recommended Document stage as contemplated by the Policies and Procedures.

1.5.20 "Representative" shall have the meaning as set forth in the Policies and Procedures.

1.5.21 "Review Documentation" means a document, or documents, which satisfy the Objective Review Period Criteria, and which constitutes the basis for the Calling of a Notice Period, and, which, in turn, constitutes the basis for any Disclosure Statement and Licensing Statement by a Member during such Notice Period, including, but not limited to, a Proposed Specification that may be delivered to the Members in the Final Notice Period, or a Draft Specifications.

1.5.22 "Scope" means the creation, distribution, consumption, or securing of electronic publications, to the extent required for compliance with a Specification.  An "electronic publication" is a literary work in digital format that is disseminated and accessed electronically.  For purposes of illustration, an electronic publication may incorporate multimedia elements such as text, digitized images, animation, and sound tracks, and may employ hypertext technology.

1.5.23 "Specification" shall have the meaning as set forth in the Policies and Procedures, and includes, but may not be limited to, Submitted Specifications, Draft Specifications, Proposed Specifications, and Recommended Specifications. Without limiting the foregoing, the term Specification shall also include any Specification that, as of the date this IP Policy is duly approved as a Recommended Document as contemplated by the Policies and Procedures, or may already be in development by the IDPF or any of its Working Groups.

1.5.24 "Submitted Specification" means a Specification that is in the Submitted Document stage as contemplated by the Policies and Procedures.

1.5.25 "Working Group" shall have the meaning as set forth in the Policies and Procedures.

2. Intellectual Property Policies for IDPF Specifications and Standards Activities

2.1 Subject only to the license and ownership provisions set forth in Sections 2 and 3 of this IP Policy, each Member shall retain all of its patent, copyright, trade secret and other proprietary rights in and to any inventions, works, data or technologies owned by it.

2.2 At any time prior to the first Intermediate Notice Period, and between any of the Notice Periods, for a particular Specification that may be under consideration or

EXHIBIT A

development by a Working Group, if a Member's Representative has actual personal knowledge that any of such Member's patents or patent applications contain "Essential Claims", the Representative *may disclose*, in writing or via email, the existence of any such patents, claims, or patent applications to the chair or secretary of the Working Group or Subgroup in which such Specification is under consideration.

2.3      2.3.1    *Calling Intermediate Notice Periods*.  In the course of developing and considering a Specification by a Working Group, a Working Group may, upon a proper vote of the Members of the Working Group in accordance with the voting rules for the Working Group (including, but not limited to, the voting rules set forth in the Policies and Procedures) initiate up to, but not more than, two Intermediate Notice Periods in any twelve (12) month period (hereinafter referred to as a "Call of an Intermediate Notice Period " or  the "Calling of an Intermediate Notice Period"). In order to authorize a Call of an Intermediate Notice Period, the Working Group must, in addition to any other terms and conditions set forth in this IP Policy (including, but not limited to, this Section 2.3), satisfy the following conditions: (i) the Working Group must identify the specific Review Documentation which will constitute the basis for the Intermediate Notice Period and which, in turn, will constitute the basis for the Members' Disclosure Statements, as contemplated by Section 2.4 below, and Licensing Statements, as contemplated by Section 2.5 below; (ii) the Review Documentation must be sufficiently detailed to satisfy the Objective Review Period Criteria (as such term is defined herein); and (iii) as a part of each vote by a Working Group to approve a Call of an Intermediate Notice Period, the Working Group must also approve an affirmative statement that such Working Group has evaluated the Objective Review Period Criteria and concludes that the Review Documentation that is the subject of the applicable Intermediate Notice Period fully satisfies such Objective Review Period Criteria.

2.3.2    *Calling the Final Notice Period*.  In the course of developing and considering a Specification by a Working Group, and once a Specification has been elevated to a Proposed Document pursuant to, and in accordance with, the Policies & Procedures, a Working Group may, upon a proper vote of the Members of the Working Group in accordance with the voting rules for the Working Group (including, but not limited to, the voting rules set forth in the Policies and Procedures) initiate the Final Notice Period (hereinafter referred to as a "Call of the Final Notice Period" or the "Calling of the Final Notice Period").  In order to authorize a Call of the Final Notice Period, the Working Group must, in addition to any other terms and conditions set forth in this IP Policy (including, but not limited to, this Section 2.3), satisfy the following conditions:(i) the Working Group must identify the Proposed Specification which will constitute the basis for the Final Notice Period and which, in turn, will constitute the basis for each Member's Disclosure Statement, as contemplated by Section 2.4 below, and Licensing Statement, as contemplated by Section 2.5 below; (ii) the Proposed Specification must be sufficiently detailed to satisfy the Objective Review Period Criteria (as such term is defined herein); and (iii) as a part of each vote by a Working Group to approve a Call of the Final Notice Period, the Working Group must also approve an affirmative statement that such Working Group has evaluated the

Objective Review Period Criteria and concludes that the Proposed Specification that is the subject of the applicable Final Notice Period fully satisfies such Objective Review Period Criteria.

2.3.3   The chairperson of the Working Group shall report to the Secretary of the IDPF the results of each Working Group vote related to the Calling of an Intermediate Notice Period and the Calling of the Final Notice Period.  If the Working Group has voted to Call a Notice Period, the Secretary shall proceed with the process set forth in Section 2.5.

2.3.4   Any IDPF Member may, in writing, petition (a "Re-evaluation Request") the Board of Directors to review any vote of a Working Group to either Call, or not Call, an Intermediate Notice Period, or to review any vote of a Working Group to Call a Final Notice Period.  Upon receipt of the written Re-evaluation Request, and subject to the conditions outlined  herein, the Board of Directors will have the right to review a Working Group's vote related to Calling the applicable Notice Period and the Board of Directors could (i) with regard to a Re-Evaluation Request related to an Intermediate Notice Period (whether the vote approved or did not approve Calling the applicable Intermediate Notice Period), either cancel an Intermediate Notice Period even thought the Working Group voted for the same, or require the Calling of an Intermediate Notice Period even though the Working Group voted against Calling the same; and (ii) with regard to a Re-Evaluation Request related to a Final Notice Period, either cancel the Final Notice Period or allow the Final Notice Period to continue as approved by the vote of the Working Group. In making its determination, the Board must use the same Objective Review Period Criteria, and the same meaning of Review Documentation, that the Working Group must use when it conducted the Working Group vote. During the period that the Board of Directors is evaluating a Member's Re-evaluation Request to review a Working Group's vote, the days of the applicable Notice Period shall be tolled and the duty, if any, of Members to provide Licensing Statements (as contemplated by Section 2.4) and Disclosure Statements (as contemplated by Section 2.5) will all be suspended, pending the outcome of the Board of Director's decision related to such Working Group vote. If the Board of Director's decides to resume the applicable Notice Period, the Notice Period shall resume as of the date it was initially tolled.

2.3.5   With regard to Intermediate Notice Periods only, any IDPF Member may, in writing, petition the Board of Directors to require a Working Group to have a vote on whether to Call an Intermediate Review Period. In the event the Board so directs a Working Group to have such a vote related to an Intermediate Review Period, all of the procedures set forth in this Section 2 will thereafter apply to that Working Group's vote.

2.3.6   All Intermediate Notice Periods that are Called, whether initially Called by a Working Group without any input by the Board of Directors ,or by the initiative of the Board of Directors as contemplated by Section 2.3.4 and 2.3.5 above, such

Intermediate Notice Period shall count as one of the two Intermediate Notice Periods permitted by Section 2.3.1 above in any twelve (12) month period.

2.4     2.4.1   During a Notice Period called by the Secretary of the IDPF in accordance with Section 2.5, the following procedures shall apply concerning the disclosure, if any, by a Member of its "Essential Claims" (the "Disclosure Statement") during the applicable Notice Period: (i) if a Representative has actual personal knowledge that any of such Member's patents or published patent applications contain "Essential Claims," such determination to be based only upon the applicable Review Documentation that is the basis of the applicable Notice Period, then the Representative *shall disclose*, in writing or via email, the existence of any such patents, claims, or published patent applications by providing the registration number for the applicable patent registration or application number/serial number for the applicable published patent application to the chair or secretary of the Working Group or Subgroup in which such draft is under consideration; and (ii) if the Representative has actual personal knowledge that any patent application of such Member which has *not* yet been published anywhere in the world (hereinafter, "Non-published Application(s)") contains "Essential Claims," such determination to be based only upon the applicable Review Documentation that is the basis of the applicable Notice Period, then the Representative *may disclose*, in writing or via email, to the chair or secretary of the Working Group or Subgroup in which such draft is under consideration, any information he/she may deem useful for the continued development of the applicable Specification, including, but not necessarily limited to, describing those portions of the  Specification that may be so affected by the Essential Claims contained in the Non-published Application.  The above provisions of this Section 2.4.1 concerning a Representative's disclosure of patents and patent applications related to the applicable Review Documentation shall terminate at the end of the applicable Notice Period for such Review Documentation.

2.4.2   Any obligation of a Representative to provide any Disclosure Statement as contemplated by Section 2.4 and any Licensing Statement as contemplated by Section 2.5, and any voluntary delivery of any information as contemplated by Section 2.2: (i) does not include any obligation to disclose knowledge that would result from imputing the knowledge of the entire Member entity to such Representative;  and (ii) does not impose any obligation on a Member or its Representative to conduct any patent or other intellectual property searches of any kind or nature.

2.5     In the event the Secretary of IDPF receives notice that an Intermediate Notice Period or a Final Notice Period has been Called in accordance with this IP Policy and the Policies and Procedures, the Secretary of IDPF shall provide each Member identified in IDPF records with written notices that the applicable Notice Period has been Called and shall notify each Member that (i) Members may be required, during such Notice Period, to provide, if applicable (a) a Disclosure Statement, as contemplated in Section 2.4; and (b) a Licensing Statement, as contemplated by this Section 2.5; and (ii) may have an opportunity to either comment or vote, if applicable, on the applicable Review Documentation, including, but not limited to, voting on a Proposed Specification provided during a Final Notice Period.  A copy of the applicable Review

EXHIBIT A

Documentation (including, but not limited to, a Proposed Specification in the case of a Final Notice Period) shall accompany the applicable notice from the Secretary.

Member agrees that, during such Notice Period, Member will make a good faith effort to determine Member's policy with respect to the licensing of its Essential Claims to provide Members and Adopters (as such term is defined above) with the necessary rights to implement the applicable Specification (if and when such Specification is duly approved and adopted without substantive amendment or modification by IDPF as a Recommended Specification in accordance with the procedures set forth in the Policies and Procedures.

Before the end of  each Intermediate Notice Period (with regard to, and based upon, the applicable Review Documentation only ), and before the end of the Final Notice Period (with regard to, and based upon, the applicable Proposed Specification only), Member shall provide a statement to the Secretary of IDPF (a "Licensing Statement") in which it indicates that, with respect to any implementation described in the applicable Review Documentation (including, but not limited to, any Proposed Specification in the situation of a Final Notice Period), Member either:

(a)  agrees to license its Essential Claims to Members and to Adopters, for use only in those portions of implementations of the applicable Specification which are within the Scope, without charge or upon royalty-bearing terms, and upon such other terms as set forth in the Licensing Statement, but in all cases upon reasonable and non-discriminatory terms and conditions, if the Specification is adopted as a Recommended  Specification by the IDPF;

(b)  is, in good faith, unable to determine whether Member will license any of its Essential Claims that may be related to  the applicable Specification, and desires more time to make such determination, pursuant to Section 2.9 below; or

(c)  (i) with regard to those of its Essential Claims that are read on by Contributions of Member, Member agrees to license its Essential Claims to Members and Adopters in accordance with Section 2.5(a) above; and (ii) with regard to any other Essential Claims, Member does not agree to license those Essential Claims.

2.6     Notwithstanding any provisions that may be to the contrary in this IP Policy (including, but not limited to, Sections 2.5 and 2.8), (i) Member shall not be obligated to grant a license, and all parties acknowledge and agree that Member does not hereunder grant any implied license or license by estoppel, in any of its Essential Claims to any Adopter, other Member, or any other party in accordance with, or in reliance on, any information provided prior to the first Intermediate Notice Period, or any Licensing Statement or Disclosure Statement provided during any of the Intermediate Notice Periods, and only covenants to grant a license in its Essential Claims to Adopters and other Members in accordance with such Member's Licensing Statement (and corresponding Disclosure Statement) provided during the Final Notice Period; and (ii) Member shall not be obligated  to license any of its Essential Claims

pursuant to its Licensing Statement (and corresponding Disclosure Statement) provided during the Final Notice Period until such time as the applicable Specification is duly approved as  a Recommended Specification as contemplated by the Policies and Procedures.

2.7     If a license that will be granted by a Member to an Adopter pursuant to Section 2.5 is conditioned on receipt by Member of a license to Adopter's Essential Claims, Member must also require such Adopter to covenant to grant a license to Adopter's Essential Claims to all other Adopters on reasonable and non-discriminatory terms.  In providing Member's Licensing Statement pursuant to clauses (a) and (c) in Section 2.5 above, Member shall specify the extent, if any, to which it reserves the right not to grant or maintain a license to a particular potential licensee with respect to any of its Essential Claims when the potential licensee has commenced or threatened to commence litigation against Member asserting any claims with respect to Member or its intellectual property rights, and such litigation is continuing or such threats of litigation concern a subject that remains actively in dispute.

2.8     If Member does not provide a Licensing Statement as contemplated by Section 2.5 before the end of the applicable Notice Period, for any reason, including withdrawal from the IDPF or a relevant Working Group, but subject to Section 2.6 above, such Member will be deemed to have provided a Licensing Statement as described in Section 2.5(a) above, and will be bound by the same.  For purposes of clarification, a Member may also provide a Licensing Statement at any time before the beginning of the first Intermediate Notice Period, provided, however, if Member provides such an additional Licensing Statement, Member is still obliged to provide the other Licensing Statements mandated by this IP Policy.

2.9     If a Member elects to submit a Licensing Statement pursuant to Section 2.5(b) above, such Member will use good faith efforts to: (i) promptly identify with reasonable particularity the basis for its problem and communicate the same in writing to the other members of the relevant Working Group; (ii) request and collect such additional information as may be necessary to facilitate such Member's decision to provide a final Licensing Statement pursuant to Section 2.5(a) or 2.5(c) above; and (iii) reasonably cooperate with other Members to resolve its concerns and attempt to submit a final Licensing Statement pursuant to Section 2.5(a)or 2.5(c) above before the end of the applicable Notice Period.

If a Member that has submitted a Licensing Statement pursuant to Section 2.5(b) has complied with the requirements set forth above in this Section 2.9, and as of the last day of the applicable Notice Period has still not resolved its concerns nor issued a Licensing Statement pursuant to either Section 2.5(a) or 2.5(c), such Member may request that the applicable Notice Period be extended by thirty (30) calendar days by giving written notice to the Secretary of IDPF before the end of the applicable Notice Period.  Within a reasonable time from its receipt of such notice, the Secretary of IDPF will promptly give notice to all other Members that the applicable Notice Period has been extended, upon which time all Members will have an additional thirty (30)

calendar days to submit Licensing Statements as required under Section 2.5.  Subject to the limitations set forth below in this paragraph, a  Member's request for an extension of any Notice Period will be granted automatically, provided, however,  that the Notice Period may be extended automatically for a total of no more than two (2) times in connection with a particular Specification and, thereafter, may be extended only upon a vote of the Working Group. If, after any such extended Notice Period, such Member still has not submitted a Licensing Statement before the end of the applicable Notice Period, it will be deemed to have provided a Licensing Statement as described in Section 2.5(a) above.

2.10     Nothing in this Policy shall prohibit a Working Group or the IDPF from producing Specifications that can be implemented, in whole or in part, with royalty-free technologies.

3.        Rights in Specifications.

To ensure that Specifications can be made available to all interested parties without competing copyright claims in the document itself interfering with its publication and distribution, Member agrees that IDPF shall be the sole owner of the copyright in the Specification(s).  Member hereby grants to the IDPF a worldwide, perpetual, irrevocable, non-exclusive, sub-licensable license under any copyrights in Members' and Representatives' Contributions included in all Specifications  to reproduce, adapt, distribute, perform, display, and create derivative works of such Contributions in connection with the Specifications (including any successor thereof); provided, however, that the license granted herein  does not grant any rights with respect to any underlying software or other technologies.  Member agrees that its Representatives will not knowingly infringe a copyright or misappropriate a trade secret in any Contribution it makes to the Specification or other material submitted to the IDPF.

4.        Trademarks

Member acknowledges that neither this IP Policy nor Member's participation in IDPF grant it any license or other rights with respect to any trademarks, certification marks or other indications of origin used by IDPF in connection with its activities or any Specifications.

5.        No Confidential Relationship

All material presented to IDPF or its Working Groups or Committees shall be deemed of a non-confidential nature and therefore are for public distribution.  Except as may be separately agreed in writing, the deliberations of the IDPF Plenary Body, Working Groups, Subgroups and Committees shall not be confidential.  Disclosure of any trade secrets or other confidential information in the course of participation will not be subject to any obligation of confidentiality or nondisclosure on the IDPF or other participants.  All are cautioned not to disclose any information that they wish to maintain in confidence.  These policies do not preclude any Member or representative from entering into separate confidentiality agreements with other participants in IDPF.

6.       Contributions Subject to Additional Restrictions or Conditions

Each Member acknowledges and agrees that it will not knowingly submit Contributions that may subject any Contribution or Specification, in whole or in part, to licensing obligations with additional restrictions or requirements inconsistent with those set forth in sections 2 and 3 of this IP Policy, or that would require any portion of the Contribution to: (i) be disclosed or distributed in source code form; (ii) be licensed for the purpose of making derivative works; or (iii) be redistributable at no charge. If a Member has knowledge that a Contribution has been made that may subject any Contribution or Specification, in whole or in part, to one or more of the licensing obligations listed in this Section 6 above, such Member shall give prompt notice of the same to the Working Group Chair, Executive Director, or Secretary of the IDPF.

7.       Certain IP Issues Related to IDPF Publication Structure Specification.

If a Member contributed to or otherwise participated in the development of versions 1.0, 1.0.1 or 1.2 of the "OeBF Publication Structure Specification" (the "Documents"), (i) each such Member agrees to grant a license in its Essential Claims as prescribed by either Section 2.5(a) or Section 2.5(c) above (for purposes of this Section 7, any reference to the term Specification in the definition of "Essential Claims"shall be deemed to include these Documents ); and (ii) hereby grants a license to IDPF in any copyrights that Member holds in such Documents and Member's Contributions in such Documents.

8.       Representations By Individual Members.

If a Member, as defined herein, is a person participating in IDPF individually and not on behalf of, or affiliated with, any company or other entity, such individual represents and warrants that: (i) the individual is participating on his/her own personal accord and not on behalf of any other third party entity or organization, (ii) the individual's participation, activity, and contribution in and to the IDPF will not be in violation of any pre-existing obligation to any third party; and (iii) the individual has not, and will not, include any proprietary or other intellectual property as a part of such individual's Contribution if he/she does not own such proprietary or intellectual property, or if the same is subject to any rights or interests held by third parties.

9.       No Other Warranties

Except as may otherwise be set forth in this IP Policy, IDPF and all Members acknowledge that all information provided as part of the specification development process, including all Specifications, are all provided "AS IS" WITH NO WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, AND EACH MEMBER EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY, NONINFRINGEMENT, FITNESS FOR ANY PARTICULAR PURPOSE, OR ANY WARRANTY OTHERWISE ARISING OUT OF ANY CONTRIBUTION.

EXHIBIT A

10.     Limitation of Liability

IN NO EVENT WILL IDPF OR ITS MEMBERS BE LIABLE TO EACH OTHER, OR TO ANY THIRD PARTY FOR THE COST OF PROCURING SUBSTITUTE GOODS OR SERVICES, LOST PROFITS, LOSS OF USE, LOSS OF DATA, OR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, PUNITIVE, OR SPECIAL DAMAGES, WHETHER UNDER CONTRACT, TORT, WARRANTY, OR OTHERWISE, ARISING IN ANY WAY OUT OF THIS OR ANY OTHER RELATED AGREEMENT, WHETHER OR NOT SUCH PARTY HAD ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGES.

11.     Effect of Bankruptcy

Each Member acknowledges and agrees that this Policy and any resulting agreements may include a "license of intellectual property" which shall be subject to Section 365(n) of the United States Bankruptcy Code, and that IDPF and the Adopters of its Specifications shall be entitled to all rights and benefits of such §365(n) in accordance with its terms and conditions. All rights and licenses granted under or pursuant to this Policy by the Member are, and shall be deemed to be, for purposes of Sec. 365(n) of the U.S. Bankruptcy Code (or any other section in effect on the Effective date of this agreement that addresses rights in executory contracts), licenses of rights to intellectual property as such term is defined under the Bankruptcy Code.  The Parties agree that IDPF and each licensee shall retain and may fully exercise all of its rights and elections under the Bankruptcy Code and enforce its rights under this IP Policy provided it abides by the terms of the same.  In those situations governed by non-United States law, Member acknowledges and agrees to be bound by similar or like provisions that may exist under the laws of the applicable jurisdiction.

12.     Miscellaneous

12.1    All the provisions of these Policies shall be implemented in compliance with applicable law, including but not limited to export control and antitrust law.

12.2    This IP Policy shall be governed by the laws of the District of Columbia (USA), excluding its choice of law rules.

12.3    Members and their Affiliates shall not assign any rights hereunder without the prior written consent of the IDPF, which shall not be withheld unreasonably and provided that the Member shall have the right to terminate such Member's membership and participation upon  written notice as more fully set forth in the Bylaws.

12.4    The obligations of a Member and its  Affiliates under these Policies shall survive termination of its Membership and participation; provided, however, that a Member whose membership and participation has been terminated shall only be obligated to license its Essential Claims to Adopters and other Members (as contemplated by Section 2.5) with regard to only those Recommended Specifications which have been released prior to the effective date of such Member's termination of its membership and participation and, further provided, that such Member's licensing obligation shall

EXHIBIT A

(a) only apply to the extent of the terminating Member's Disclosure Statement and Licensing Statement provided during the applicable Final Notice Period; and (b) be subject to all of the terms and limitation otherwise set forth in this IP Policy. Without limiting the generality of the foregoing, any licenses Member has granted prior to the effective date of the Member's termination of its membership and participation shall survive such termination.