UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OverDrive, Inc., | ) | Case No. 1:17-CV-165 |
| | ) | |
| Plaintiff, | ) | Judge Solomon Oliver, Jr |
| | ) | |
| vs. | ) | |
| | ) | |
| The Open eBook Forum d/b/a the | ) | |
| International Digital Publishing Forum, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum in Support of The Open
<u>eBook Forum's Motion For Summary Judgment</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................. ii

TABLE OF EXHIBITS ......................................................................................v

BRIEF STATEMENT OF THE ISSUES TO BE DECIDED..................................... vi

SUMMARY OF THE ARGUMENTS PRESENTED ............................................. vii

INTRODUCTION...............................................................................................1

STATEMENT OF UNDISPUTED FACTS ............................................................ 2

    I.    IDPF And Its Development Of EPUB........................................... 2

    II.   IDPF's Ownership Of EPUB Under Its IP Policy ........................ 4

    III.  IDPF's Proposed Combination With MIT/W3C....................... 4

    IV.  OverDrive Sues IDPF In Washington, D.C. Superior Court ................... 5

    V.   OverDrive Sues IDPF In Ohio ................................................. 5

LAW AND ARGUMENT ...................................................................................7

    I.    Standard for Granting Summary Judgment............................... 8

    II.   "Transferring" A Copyright Cannot Constitute Infringement................ 8

    III.  OverDrive Cannot Establish
          Ownership Of A Protectable Interest In EPUB ........................ 11

    IV.  OverDrive Waived Its Copyright Infringement
          Claim By Granting IDPF A License Under The IP Policy ...................... 15

        A.   OverDrive Waived Direct Infringement ........................ 15

        B.   OverDrive Waived Contributory Infringement............................. 16

        C.   Whether Infringement Might Occur In The Future Is Not
            Ripe And OverDrive Waived Any Future Infringement By MIT................... 17

    V.   IDPF's Allegedly-Infringing Conduct Is Statutorily Privileged ............................ 19

CONCLUSION ...........................................................................................20

LOCAL RULE 7.1(F) DECLARATION................................................................ 22

**TABLE OF AUTHORITIES**

**Cases**

*16 Casa Duse, LLC v. Merkin¸*
    791 F.3d 247 (2d Cir. 2015) ........................................................................ 11

*Aetna Life Ins. Co. v. Haworth,*
    300 US 227 (1937) ........................................................................ 17

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................ 8

*Auscape Intern. v. National Geographic Soc.,*
    461 F. Supp. 2d 174 (S.D.N.Y. 2006) ........................................................ 10

*Bird v. Parsons,*
    289 F.3d 865 (6th Cir. 2002) ........................................................................ 12

*Bourne v. Walt Disney Co.,*
    68 F.3d 621 (2d Cir. 1995) ........................................................................ 15

*Bragdon v. Twenty–Five Twelve Assocs. Ltd. Partnership,*
    856 A.2d 1165 (D.C. 2004) ........................................................................ 18

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................ 8

*Cooley v. Granholm,*
    291 F.3d 880 (6th Cir. 2002) ........................................................................ 17

*Davis v. Blige,*
    505 F.3d 90 (2d Cir. 2007) ........................................................................ 15

*Faulkner v. National Geographic Enterprises Inc.,*
    409 F.3d 26 (2d Cir. 2005) ........................................................................ 20

*Feist Publications, Inc. v. Rural Telephone Service Co.,*
    499 U.S. 340 (1991) ........................................................................ 9, 11, 19

*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) (en banc) ........................................................ 1

*Graham v. James,*
    144 F.3d 229 (2d Cir. 1998) ........................................................................ 15

*Harper & Row Publishers, Inc. v. Nation Enterprises,*
    471 U.S. 539 (1985)............................................................................10

*In re Golden Books Family Entm't, Inc.,*
    269 B.R. 311 (D. Del. 2001) ............................................................18

*In re Patient Educ. Media, Inc.,*
    210 B.R 237 (S.D.N.Y 1997)............................................................18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    387 F.3d 522 (6th Cir. 2004) .............................................................8

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)...........................................................................8

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005) ...................................................................10, 16

*Microsoft Corp., v. Harmony Computs. & Elecs., Inc.,*
    846 F. Supp. 208 (E.D.N.Y. 1994) ....................................................8

*N.Y. Times Co. v. Tasini,*
    533 U.S. 483 (2001) .......................................................................9, 19

*Playboy Enterprises, Inc. v. Starware Pub. Corp.,*
    900 F. Supp. 433 (S.D. Fla. 1995) ...................................................11

*S.O.S., Inc. v. Payday, Inc.,*
    886 F.2d 1081 (9th Cir. 1989) ...........................................................8

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984).......................................................................8, 15

*Texas v. United States,*
    523 U.S. 296 (1998) .........................................................................17

## **Statutes**

17 U.S.C. § 101 .....................................................................viii, 9, 10

17 U.S.C. § 102....................................................................................11

17 U.S.C. § 106................................................................................10, 15

17 U.S.C. § 201......................................................................vi, 9, 10, 19, 20

28 U.S.C. § 2201 .................................................................................16

**Rules**

Fed. R. Civ. P. 56 ................................................................................................... 8

**Treatises**

M. Nimmer & D. Nimmer, Nimmer on Copyright .................................................. 11

**Regulations**

37 C.F.R. § 202.1 ................................................................................................. 12

## TABLE OF EXHIBITS

True and accurate copies of the following exhibits are attached to the Declaration of

David T. Movius, Esq. being filed herewith:

| | |
|---|---|
| Exhibit A | Deposition of Garth Conboy (excerpts) |
| Exhibit B | Deposition of Steven Potash (excerpts) |
| Exhibit C | Deposition of George Kercher (excerpts) |
| Exhibit D | IDPF's Articles of Incorporation |
| Exhibit E | IDPF's Policies and Procedures |
| Exhibit F | February 26, 2001 Board Committee Charter for OEBF IP Policy Committee |
| Exhibit G | International Digital Publishing Forum (IDPF) Intellectual Property Policy for Members |
| Exhibit H | Deposition of William McCoy (excerpts) |
| Exhibit I | Memorandum of Understanding |
| Exhibit J | *IDPF Members Approve Plan to Combine With W3C*, IDPF Website (Nov. 7, 2016), *http://idpf. org/news/ idpf-members-approve-plan-to-combine-with-w3c* |
| Exhibit K | Membership Exchange Agreement |
| Exhibit L | Specification License Agreement |
| Exhibit M | December 5, 2016 Order in *OverDrive, Inc. v. The Open eBook Forum*, Washington, D.C. Superior Court Case No. 2016 ca 007768 B |
| Exhibit N | Rule 30(b)(6) Deposition of Steven Potash (excerpts) |
| Exhibit O | OverDrive's Responses to IDPF's Interrogatories (excerpts) |
| Exhibit P | Deposition of Alexis Petric-Black (excerpts) |
| Exhibit Q | Appendix C to EPUB 2.0.1 |

## BRIEF STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether defendant The Open eBook Forum d/b/a the International Digital Publishing Forum ("IDPF") is entitled to summary judgment as a matter of law on plaintiff OverDrive, Inc.'s ("OverDrive") copyright infringement declaratory judgment claim because its proposed "transfer" of its copyrights in the EPUB digital publishing specification to Massachusetts Institute of Technology ("MIT") as the United States host for the World Wide Web Consortium ("W3C") does not violate any of the exclusive rights conferred on copyright owners by the Copyright Act?

2.      Whether IDPF is entitled to summary judgment as a matter of law on OverDrive's copyright infringement declaratory judgment claim because OverDrive cannot establish that it made any "separate and independent" contribution of original and creative expression to EPUB for which copyright protection is available?

3.      Whether IDPF is entitled to summary judgment as a matter of law on OverDrive's copyright infringement declaratory judgment claim because OverDrive granted IDPF a perpetual and irrevocable license to its claimed copyright interests that, by its terms, is assignable to MIT upon IDPF's dissolution?

4.      Whether IDPF is entitled to summary judgment as a matter of law on OverDrive's copyright infringement declaratory judgment claim because IDPF, as the owner of EPUB's collective-work copyrights, holds a transferrable statutory privilege under 17 U.S.C. § 201(c) to reproduce and distribute OverDrive's alleged contributions to EPUB?

## SUMMARY OF THE ARGUMENTS PRESENTED

OverDrive asserts one claim against IDPF, for declaratory judgment that IDPF's proposed transfer of its copyrights in the EPUB digital publishing specification to MIT directly and contributorily infringes OverDrive's copyrights in its alleged contributions to EPUB. The very premise of OverDrive's claim is fatally flawed as a matter of law.

OverDrive pleads, and therefore judicially admits, that EPUB is a collective work. As such, two independent copyrights subsist in each version of EPUB: (i) copyright in each separate and independent contribution to EPUB; and (ii) copyright in EPUB as a collective whole. OverDrive previously agreed under IDPF's IP Policy that IDPF is the sole owner of the EPUB copyrights, and it has stipulated that IDPF's proposed "transfer" of its EPUB copyrights to MIT is the *only* basis upon which it alleges direct infringement. To survive summary judgment, OverDrive therefore must establish that a "transfer" of IDPF's own collective-work copyrights can, as a matter of law, constitute infringement of OverDrive's claimed copyrights in its contributions and that OverDrive actually holds protectable copyright interests in the contributions it claims to have made. Summary judgment should be granted because OverDrive can do neither. But even if it could, summary judgment still should be entered because OverDrive licensed IDPF to engage in its allegedly-infringing conduct and that conduct is statutorily privileged.

As a matter of law, a transfer by IDPF *of its own copyrights* cannot constitute an infringement *of OverDrive's separate copyrights.* Section 106 of the Copyright Act confers a bundle of exclusive rights to the owner of a copyright, including the right to reproduce, the right to prepare derivative works, the right to distribute, the right to perform, and the right to

display. It does not, however, confer on a copyright owner any right to restrict a third-party copyright owner from transferring its own copyrights. On the contrary, Section 201 of the Copyright Act provides that all copyrights—including collective-work copyrights—may be transferred in whole or in part. OverDrive's claim therefore fails because it cannot establish that IDPF assigning its own copyrights to MIT could under any circumstance constitute an infringement of the copyrights that OverDrive claims in contributions to EPUB.

OverDrive's declaratory judgment claim also fails because OverDrive cannot establish that it owns a protectable copyright interest in any contribution it may have made to EPUB. To establish copyright in a contribution, OverDrive must specifically identify the contribution and establish that qualifies a "separate and independent" work. *See* 17 U.S.C. § 101 (defining "collective work"). OverDrive cannot identify any phrase or sentence in any version of EPUB that was authored by any of the three employees it identifies as having contributed to EPUB on its behalf. OverDrive's infringement allegations therefore fail as a matter of law because OverDrive cannot establish that it made any separate and independent contribution of original and creative expression to EPUB.

OverDrive's declaratory judgment claim fails for the additional reason that OverDrive granted IDPF a "worldwide, perpetual, irrevocable, non-exclusive and sub-licensable" license under any copyrights it might have in anything it contributed to EPUB. That license waives any claim that OverDrive otherwise might have had against IDPF for copyright infringement. Moreover, because IDPF has sublicensed its rights to MIT, OverDrive cannot establish any direct infringement by MIT for which IDPF could be vicariously liable. OverDrive additionally cannot establish any future direct infringement by MIT for which IDPF could somehow be

held liable because that issue is not yet ripe for adjudication and because the IP Policy expressly permits IDPF to allocate its rights under that policy to MIT upon its dissolution.

Finally, OverDrive's declaratory judgment claim fails because Section 201(c) of the Copyright Act confers on IDPF a statutory privilege to reproduce and distribute any contributions OverDrive might have made. By admitting that EPUB is a collective work through both its pleadings and its own copyright registrations, OverDrive concedes that EPUB as a whole embodies sufficient creativity to be copyright-protected. Section 201(c) therefore applies to IDPF as the undisputable collective-work copyright owner such that IDPF's dealings with MIT are statutorily immune irrespective of whether OverDrive can establish that it made separate and independent copyrightable contributions to EPUB. IDPF's Section 201(c) statutory privilege also bars OverDrive's allegations with respect to contributory liability for both current and (assuming it is ripe for adjudication) future infringement by MIT because that statutory privilege is fully transferrable to MIT.

For each of these reasons, OverDrive's copyright infringement allegations fail as a matter of law and the Court should enter summary judgment for IDPF.

## INTRODUCTION

OverDrive ostensibly brought this case for the narrow, but legitimate, purpose of protecting whatever slender copyrights it might have in its alleged contributions to the EPUB digital publishing specification. But this case is not actually about OverDrive protecting its copyrights. It is about OverDrive trying to use copyright law as a blunt instrument to achieve what its lobbying of IDPF's members and its first-filed suit in Washington, D.C. Superior Court could not: stymie IDPF's proposed combination with MIT and W3C, the international standards body founded by Tim Berners-Lee, the inventor of the world wide web.

Copyright is an "engine of expression," not a means to achieve some other end, no matter how righteous or urgent it appears. *See, e.g., Garcia v. Google, Inc.,* 786 F.3d 733, 744-746 (9th Cir. 2015) (en banc) (death threats against actress who unwittingly appeared in anti-Islam film not relevant to copyright injunction). OverDrive's attempt to leverage copyright law to scuttle IDPF's deal with MIT therefore should be met with high skepticism.

Long before OverDrive sued IDPF, Steven Potash, OverDrive's founder and chief executive officer, was one of IDPF's biggest champions. Mr. Potash served IDPF for many years and in many roles, including as a board member and president. Of particular importance to this case, Mr. Potash chaired the committee charged with developing IDPF's IP Policy. Under the policy, which Mr. Potash helped write and implement, OverDrive agreed that IDPF owns the EPUB copyrights and granted IDPF a license to any contributions it made to EPUB. But now that Mr. Potash and OverDrive have decided that IDPF's combination with W3C is a bad deal, OverDrive posits that copyrights in its contributions to EPUB give it a unilateral veto over IDPF's pending combination with MIT notwithstanding the IP Policy because EPUB is a

"collective work." While that was enough for OverDrive to avoid judgment on the pleadings, it is not enough for OverDrive to avoid summary judgment.

Assuming *arguendo* that it is a collective work, two independent copyrights subsist in each version of EPUB: (i) copyright in each "separate and independent" contribution to EPUB; and (ii) copyright in EPUB as a collective whole. With this in mind, OverDrive stipulated that IDPF's proposed "transfer" of its own collective-work copyrights is the *only* basis upon which OverDrive alleges direct infringement. But that makes no sense. How can a transfer (*i.e.,* assignment) by IDPF of only *its own* copyrights be an infringement of *OverDrive's copyrights*? The answer: it cannot. OverDrive's copyright infringement allegations therefore have no legitimate legal or factual basis.

But even if OverDrive's conflated infringement theory was on firm legal footing, its declaratory judgment claim still would fail because OverDrive cannot identify any separate and independent copyrightable contribution that it actually made to EPUB, OverDrive waived its infringement claims by licensing IDPF under the IP Policy, and IDPF's alleged acts of infringement are statutorily privileged. OverDrive therefore cannot establish infringement of any legitimate copyright interest and summary judgment should be granted.

## STATEMENT OF UNDISPUTED FACTS

### I. IDPF And Its Development Of EPUB

The genesis of EPUB—which first was known as the Open eBook Publication Structure (or OEBPS)—began in 1998 as a collaborative effort among three competing companies working in the nascent electronic book space, Softbook Press, Inc., NuvoMedia, Inc. and Microsoft Corporation, to create a device-independent specification for electronic books.

(Deposition of Garth Conboy ("Conboy Tr."), Exh. A, 40:13-42:16.) Their work resulted in an initial specification called the "Open eBook Format." (*Id.* at 40:13-43:15.)

With the announcement of the Open eBook Initiative by the National Institute of Standards and Technology, a broader "Authoring Group" comprising representatives from the publishing and software industries convened to advance the Open eBook Format. (Conboy Tr. 42:19-43:2; Deposition of Steven Potash ("Potash Tr."), Exh. B, 32:2-4; Deposition of George Kerscher ("Kerscher Tr."), Exh. C, 34:24-35:9.) Its work included evaluating other, existing specifications, deciding what to include and what to exclude, contributing original content, and revising the Open eBook Format through consensus. (Conboy Tr. 42:19-43:2, 47:8-48:17; Kerscher Tr. 37:21-41:4, 75:2-76:16.) The Authoring Group's work culminated in *The OEB Publication Structure 1.0* (*i.e.*, "OEBPS 1.0"). (Conboy Tr. 44:4-10; Potash Tr. 38:2-7.)

The Open eBook Forum was formed in 2000 as a member-run not-for-profit organization to "develop, publish, and maintain common specifications relating to electronic books and promote successful adoption of these specifications." (Articles of Incorporation, Exh. E, at Article III.) To do so, IDPF (as the organization now is known) adopted policies and procedures to govern its development and maintenance of its specification through board-chartered working groups. (IDPF Policies and Procedures ("IDPF Policies"), Exh. E, § 4.)

Each working group is led by a chairperson who reports directly to IDPF's board, and its charter identifies the working group's specific goals and objectives. (IDPF Policies §§ 4.2.1.3, 4.4.1, 4.3; Kerscher Tr. 29:9-30:8.) Once chartered, IDPF members can volunteer to participate in its work, subject to the IP Policy. (*Id.* at §§ 4.1.1, 4.2.1.3.) After the working group reaches a final consensus (as determined by the chairperson), its work is submitted to IDPF's board and

then, if approved, to IDPF's membership for a final vote. (*Id.* at § 4.6.) Each iteration of EPUB

was developed consistent with these policies and procedures. (Conboy Tr. 51:7-24.)

## II.   IDPF's Ownership Of EPUB Under Its IP Policy

In February 2001, IDPF's board chartered an IP Policy Committee—chaired by Mr.

Potash—to "develop proposed terms and conditions for operation of OEBF relating to all IP

matters." (Exh. F, Feb. 26, 2001 Board Committee Charter for OEBF IP Policy Committee.)

Through the Committee's work under Mr. Potash, IDPF developed and implemented an IP

Policy that addresses copyright ownership and licensing for EPUB. (Exh. G, the "IP Policy.")

Under the IP Policy, each "Member"—including OverDrive—agrees that "IDPF shall be the

sole owner of the copyright in" all then-existing and future versions of "the Specification(s)."

(IP Policy §§ 1.5.23, 3.) Additionally, each "Member" grants IDPF a blanket copyright license

under any copyrights it may have with respect to its "Contributions" to EPUB. (*Id.* at §§ 3.)

## III.   IDPF's Proposed Combination With MIT/W3C

In recent years, IDPF's board of directors grew increasingly concerned that the

organization's mission and efforts were being jeopardized by its growing financial difficulties

and rapid changes in the digital publishing industry. (Kerscher Tr. 131:17-24, 147:23-149:3;

Conboy Tr. 149:2-150:18; Deposition of William McCoy ("McCoy Tr."), Exh. H, at 140:7-144:15,

174:20-177:16, 183:12-19.) Those concerns prompted IDPF's Board to explore a possible

combination with W3C, through MIT as its United States representative. (McCoy Tr. 140:7-

144:15, 174:20-177:16, 183:12-19; Cmplt. ¶¶ 24-27.)

After soliciting comments from its membership and holding open meetings, IDPF on

September 28, 2016, entered into a memorandum of understanding with MIT regarding the

disposition of IDPF's assets and the combination of its membership with W3C's. (Exh. I, Memorandum of Understanding.) The proposed transaction was then put to a vote, with over 80 percent of IDPF's membership voting "yes." (Exh. J, *DPF Members Approve Plan to Combine With W3C*, IDPF Website (Nov. 7, 2016), *http://idpf.org/news/idpf-members-approve-plan-to-combine-with-w3c*.) With its membership's overwhelming approval, IDPF in January 2017 entered into a definitive Membership Exchange and Asset Transfer Agreement with MIT (the "Membership Exchange Agreement," Exh. K).

Under the Membership Exchange Agreement, IDPF agreed to assign its own copyrights in EPUB to MIT upon its dissolution. (*Id.* at § 3(b) and Exhibit B.) IDPF also granted MIT a license to IDPF's copyrights pending its dissolution, which IDPF and MIT further memorialized in their Specification License Agreement. (*Id.* at § 3(b)(4); Exh. L, Specification License Agreement § 3.)

## IV.   OverDrive Sues IDPF In Washington, D.C. Superior Court

OverDrive voted against IDPF's combination with W3C, and Mr. Potash has adamantly and vocally advocated against it. (*See, e.g.,* Cmplt. ¶¶ 18, 34, 38.) Putting Mr. Potash's objections into action, OverDrive on October 24, 2016, sued IDPF in Washington, D.C., Superior Court to block the transaction. (*Id.* at ¶¶ 34-35; Exh. M, Dec. 5, 2016 Order at 5-6.) The court denied OverDrive's motion for injunctive relief, and that case remains pending. (Cmplt. ¶ 34; Dec. 5, 2016 Order at 7.)

## V.   OverDrive Sues IDPF In Ohio

OverDrive filed this declaratory action after it failed to stop IDPF's proposed combination with W3C both at the ballot box and before the Washington, D.C. Superior

Court. (Cmplt., ECF # 1.) Tacitly, if not explicitly, acknowledging that it previously agreed to IDPF's ownership of the EPUB copyrights, OverDrive pleads that EPUB is a "collective work" comprising contributions by it and other IDPF members and asserts that IDPF has infringed OverDrive's copyrights in its contributions. (Cmplt. ¶¶ 17, 51-52.)

Originally, OverDrive pleaded that IDPF has directly infringed OverDrive's asserted rights by distributing EPUB to MIT and that it was contributing to, and therefore vicariously liable for, direct infringement by MIT as a result of pursuing its combination with MIT. (Cmplt. ¶¶ 51-52.) OverDrive subsequently changed and narrowed the scope of its infringement allegations by stipulating that IDPF's "transfer" of its copyrights to MIT is the only act of direct infringement OverDrive asserts. (Rule 30(b)(6) Deposition of Steven Potash ("Potash 30(b)(6) Tr."), Exh. N, 193:3-11.) OverDrive thus asks this Court to declare that IDPF has directly infringed OverDrive's copyrights by "transferring" (or, more correctly, agreeing to transfer) its copyrights in EPUB to MIT and that it is contributing to direct infringement by MIT. (Cmplt. ¶¶ 53-54.) OverDrive has not, however, indicated how a transfer by IDPF can constitute a direct infringement by MIT for which IDPF could be vicariously liable.

In support of its new-found and newly-asserted copyright infringement theory, OverDrive asserts that three employees contributed to EPUB on its behalf:

| EPUB Version | OverDrive Employee(s) |
|---|---|
| OEBPS 1.0 | Steven Potash |
| EPUB 2.0.1 | Steven Potash, Alexis Petric-Black & Dorothea Salo |
| EPUB 3.0 | Alexis Petric-Black |

(Exh. O, OverDrive Response to Interrogatory ("Interrog. Resp.") Nos. 4-8.) OverDrive further contends that, although none of its employees participated in the EPUB 3.1 working group, that version includes some of its earlier contributions. (Cmplt. ¶¶ 19-22, 31-32, 36, 40.)

IDPF moved for judgment on the pleadings based on its statutory privilege under 17 U.S.C. 201(c) and its IP Policy license. (*See* ECF # 15, 16.) The Court denied IDPF's motion, finding that "further inquiry is required to determine whether Defendant's compilation of the EPUB specification constitutes the creativity necessary to consider IDPF the collective work author" and that "[w]hether the terms of the IDPF-MIT Transaction create a legal transfer or assignment of the EPUB specifications that exceeds the scope of IDPF's license, or rather a sublicense or distribution, is a question that cannot be determined without an inquiry into the terms of that contract." (Order, ECF # 20, at 9, 12.) With discovery now complete, these and all other material questions have been answered in IDPF's favor.

First and foremost, OverDrive's stipulation means that OverDrive cannot, as a matter of law, prove infringement. (Potash 30(b)(6) Tr. 193:3-11.) OverDrive's claim also fails because it cannot identify any expression within any version of EPUB that OverDrive authored. (Potash 30(b)(6) Tr. 72:7-73:5, 74:13-86:24, 109:21-111:4; Deposition of Alexis Petric-Black ("Petric-Black Tr."), Exh. P, 134:11-16, 145:19-24, 149:6-10, 183:10-:184:10, 187:6-197:5, 238:23-241:16.) OverDrive further did not any elicit evidence that a transfer would violate the IP Policy or that EPUB as a whole does not merit copyright protection. Based on this record, no genuine issue of material fact remains and judgment should be entered for IDPF as a matter of law.

## LAW AND ARGUMENT

OverDrive's claim fails as a matter of law and summary judgment should be granted to IDPF for at least four independently-sufficient reasons. *First,* a transfer by IDPF of its own copyrights does not violate any of OverDrive's copyrights. *Second*, OverDrive cannot establish ownership of any protectable contribution to EPUB. *Third,* OverDrive waived its infringement

allegations when it granted IDPF its license under the IP Policy. And *fourth,* IDPF's statutory privilege under 17 U.S.C. § 201(c) precludes infringement.

## I.   <u>Standard for Granting Summary Judgment</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A moving party may meet that burden by 'showing' - that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-moving party must affirmatively come forward with "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## II.   <u>"Transferring" A Copyright Cannot Constitute Infringement</u>

To survive summary judgment, OverDrive must establish (1) its ownership of valid copyrights and (2) "copying" of protectable elements of its copyrighted works. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 534 (6th Cir. 2004). In this context, "copying is shorthand for the infringing of any of the copyright owner's five exclusive rights" under Section 106, namely: to reproduce, to prepare derivative works, to distribute, to perform, and to display. *Microsoft Corp., v. Harmony Computs. & Elecs., Inc.,* 846 F. Supp. 208, 210 (E.D.N.Y. 1994) (quoting *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1085 n.3 (9th Cir. 1989)). Any use that does not violate an enumerated right is not infringement. *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 447 (1984).

OverDrive cannot sustain its copyright infringement claim because it cannot establish a violation of any of OverDrive's exclusive rights under the Copyright Act. As fact discovery was concluding, OverDrive stipulated that IDPF's proposed "transfer" of its copyrights to MIT is the *only* basis upon which it alleges direct infringement:

> MR. MOVIUS: So will you stipulate that the only act of direct infringement that this case is directed to is a transfer of IDPF's copyrights or transfer of rights with respect to the EPUB specification to MIT and W3C?
>
> MR. AVSEC:   Thank you. I will so stipulate.
>
> MR. MOVIUS: Okay.

(Potash 30(b)(6) Tr. 193:3-11.) Overdrive's stipulation, which differs materially from what it pleaded,[1] is dispositive because IDPF's proposed transfer[2] of its own copyrights cannot under any circumstance violate any exclusive rights OverDrive might have under the Copyright Act.

Two classes of copyrights subsist in collective works: "[c]opyright in each separate contribution to a collective work" and "copyright in the collective work as a whole." *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 496 (2001) (quoting 17 U.S.C. § 201(c)). The copyright in a contribution vests with the author of that contribution. *Id.* And separately, copyright in the collective work as a whole vests in the collective author. *See Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 358 (1991). OverDrive agreed that IDPF owns the EPUB copyrights, and the Membership Exchange Agreement only calls for IDPF to assign *its own* copyrights to MIT. (IP Policy § 3; Membership Exchange Agreement § 3(b).) OverDrive's

---

[1] OverDrive pleaded that IDPF had directly infringed by distributing EPUB to MIT and that it has contributed to direct infringement by MIT by endeavoring to combine with it. (Cmplt. ¶¶ 51-52.)

[2] The Copyright Act defines "transfer of copyright ownership" as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including an exclusive license." 17 U.S.C. § 101.

stipulation thus reveals that its entire case is constructed on the conflated notion that IDPF's proposed transfer of *its own* copyrights to MIT could constitute infringement of *OverDrive's* separate copyrights in its contributions. That is as absurd as it is legally incorrect.

Section 106 of the Copyright Act confers "a bundle of exclusive rights to the owner of a copyright." *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 546-547 (1985) (citing 17 U.S.C. § 106). That bundle does not include the right to exclude a collective-work copyright owner from transferring its own copyrights. *See* 17 U.S.C. § 106. In fact, the opposite is true: under Section 201, any copyright "may be transferred in whole or in part by any means of conveyance or by operation of law[.]" 17 U.S.C. § 201(d)(1). That includes collective-work copyrights—*even if a contributor objects. See Auscape Intern. v. National Geographic Soc.,* 461 F. Supp. 2d 174, 188 (S.D.N.Y. 2006) (under "plain terms of Section 201(d)(1)," collective-work copyright owner may assign rights despite objection by contributor). IDPF's proposed transfer of its copyrights to MIT therefore is permitted, not prohibited, by the Copyright Act.

OverDrive's stipulation also disposes of its contributory infringement allegations. To establish contributory infringement, OverDrive must prove that MIT has directly infringed and that IDPF induced or encouraged that direct infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005). Due to its stipulation, OverDrive must establish that IDPF's proposed transfer constitutes direct infringement *by MIT.* But OverDrive cannot because, as discussed above, a transfer does not infringe any exclusive right. Moreover, MIT is not the transferring party, so a transfer *by IDPF* cannot constitute direct infringement *by MIT* for which IDPF could be contributorily liable. OverDrive's direct and contributory infringement allegations therefore fail and IDPF is entitled to judgment as a matter of law.

## III. **OverDrive Cannot Establish Ownership Of A Protectable Interest In EPUB**

As defined in Section 101, "copyright may subsist in contributions to a collective work, but *only* when such contributions constitute 'separate and independent' works." *16 Casa Duse, LLC v. Merkin¸* 791 F.3d 247, 257 (2d Cir. 2015) (quoting 17 U.S.C. § 101 (defining "collective work"); citation omitted, emphasis added). "The requirement that contributions be 'separate and independent' in order to obtain their own copyright protection ... indicates that inseparable contributions integrated into a single work cannot separately obtain such protection." *Id.* A contribution therefore must be separable and must also qualify as a "work of authorship" standing on its own to receive copyright protection. *Id.* at 259.

Because OverDrive pleaded that EPUB is a collective work, it must establish three elements to proceed on its infringement claim. *First,* OverDrive must identify each "separate and independent" work within EPUB that it contributed. *See Playboy Enterprises, Inc. v. Starware Pub. Corp.*, 900 F. Supp. 433, 436 (S.D. Fla. 1995) (collective-work copyright infringed "if any copyrightable portion of the work which is original to the copyright owner is improperly copied by another"). *Second,* OverDrive must establish that each of the contributions it identifies is "original" to it. *See Feist,* 499 U.S. at 345 ("The *sine qua non* of copyright is originality.") "Originality" means that a "work" originated with the claimed author. *Id.* (citing 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 2.01[A]). And *third*, OverDrive must establish that each of its original "separate and independent" contributions embodies and reflects sufficient creativity to warrant copyright protection. *Id.* at 358-59.

OverDrive contends that EPUB includes original expression authored by Mr. Potash (OEBPS 1.0, EPUB 2.0.1), Ms. Petric-Black (EPUB 2.0.1 , EPUB 3.0) and Dorothea Salo (EPUB

2.0.1). (Interrog. Resp. Nos. 6-9.) OverDrive cannot, however, identify even one "separate and independent" contribution by any of them that is both original and creative.

### OEBPS 1.0 (*i.e.*, EPUB 1.0)

While Mr. Potash asserts that he contributed ideas to OEBPS 1.0, copyright protects the expression of an idea, not the idea itself. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection ... extend to any idea ... regardless of the form in which it is described, explained, illustrated or embodied in such work."). That is dispositive because Mr. Potash did not contribute any expression of his ideas to OEBPS 1.0. For example, with respect to Section 2.3.1, he testified that he contributed his ideas and intents, not the words used to express them:

> Q.     Did you draft any of the sentences that are in Section 2.3.1 of version 1.0 of the specification?
>
> A.     *I did not author the specific sentences*, but expressed these important components that I intended to have as part of the specification.

(Potash Tr. 69:12-16.) The same is true for every other contribution Mr. Potash claims. (*Id.* at 57:1-7, 59:23-25 & 60:8-64:16, 66:24-67:3, 85:9-96:20.) OverDrive therefore did not make any separate and independent contribution of original and creative expression to OEBPS 1.0.

### EPUB 2.0.1

Mr. Potash's only contribution to EPUB 2.0.1 was his coining of the words "IDPF" and "EPUB." (Potash 30(b)(6) Tr. at 74:19-76:4; 77:20-78:10; 86:14-24.) That does not make him or OverDrive an author because copyright does not extend to "[w]ords and short phrases such as names, titles and slogans."[3] 37 C.F.R. § 202.1(a). *See Bird v. Parsons*, 289 F.3d 865, 881-82 (6th Cir. 2002) (affirming dismissal because copyright originality does not subsist in single word).

---

[3] But even if he had made a copyrightable contribution, it would have transferred to IDPF "by operation of law" under 17 U.S.C. § 201(d)(1) because he did so as a board member. (Potash Tr. 207:15-208:11.)

Ms. Petric-Black participated in the EPUB 2.0.1 working group, but she could not identify any contribution she made. (Petric-Black Tr. 145:19-24, 149:6-10, 187:6-195:7.) According to Ms. Petric-Black, the working group's process involved detailed wordsmithing:

> Q.  And would that get down to even just the level of, like wordsmithing? Like this – it has to say this word and somebody would be like, no, it has to say that word kind of level?
>
> A.  Absolutely. You're talking about men who worked for Google, Microsoft, and Adobe duking it out over who was going to have more authorial impact on the specification. If you think they weren't wordsmithing at the character level and where the comma goes, you're crazy.

(*Id.* at 115:20-116:6.) Ms. Petric-Black could not, however, identify anything she herself wrote or wordsmithed. (*Id.* at 145:19-24, 149:6-10, 187:6-195:7.) Instead, because the final expression was decided by consensus, "there wasn't necessarily at any one point in time a single person authoring anything." (*Id.* at 120:2-4; *see also id.* at 117:5-10, 119:4-25; 150:3-4, 154:14-155:6.)

Finally, although OverDrive identified Ms. Salo as contributing to EPUB 2.0.1, she is not credited as a contributor and OverDrive otherwise cannot identify anything she specifically contributed. (EPUB 2.0.1 Appendix C, Exh. Q; Potash 30(b)(6) Tr. 72:7-73:5; Petric-Black Tr. 134:11-16, 183:10-:184:10.) OverDrive therefore did not make any separate and independent contribution of original and creative expression to EPUB 2.0.1.

### EPUB 3.0

Like with EPUB 2.0.1, Ms. Petric-Black could not identify any separate and independent work of authorship that she contributed to EPUB 3.0:

> Q.  ... As you look at Exhibit 26, the 3.0 spec, is there any text that you could identify that you specifically changed or wrote?
>
> A.  Not with any great degree of accuracy at this point, no. I don't – I couldn't point to specific characters.

Q.      Even like sentences?

A.      No.

(Petric-Black Tr. 220:10-19; *see id.* at 217:22-218:6, 226:3-22.) OverDrive thus did not make any separate and independent contribution of original and creative expression to EPUB 3.0.

### EPUB 3.0.1

While none of OverDrive's personnel participated in its working group, OverDrive contends that its prior contributions were "rolled up" into EPUB 3.0.1. (Interrog. Resp. No. 5.) As discussed above, however, OverDrive cannot identify any separate and independent contributions that it made to any previous EPUB version, and OverDrive's witnesses could not otherwise identify any contributions to EPUB 3.0.1. OverDrive thus did not make any separate and independent contribution of original and creative expression to EPUB 3.0.1, either.

### EPUB 3.1

Although OverDrive's primary grievance is that IDPF agreed to transfer EPUB 3.1 to MIT, OverDrive has not registered any copyrights in that version. (*See* Cmplt. ¶¶ 19-22, 31-32, 36, 40; Potash 30(b)(6) Tr. 124:15-18.) OverDrive also did not identify any work of authorship that it contributed to EPUB 3.1. (Interrog. Resp. No. 3.) OverDrive thus cannot demonstrate that it made any separate and independent contribution of original and creative expression to EPUB 3.1 that could support its copyright infringement allegations.

#             #             #

Because OverDrive cannot identify any specific contribution of any original expression that it made to any EPUB version, it cannot carry its burden of establishing ownership of a valid copyright. OverDrive therefore cannot make out a prima facie case of copyright infringement and IDPF should be granted summary judgment.

## IV. OverDrive Waived Its Copyright Infringement
## Claim By Granting IDPF A License Under The IP Policy

"[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute … is not an infringer of the copyright with respect to such use." *Sony*, 464 U.S. at 433. As such, "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). A license thus "immunizes the licensee from a charge of copyright infringement." *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007). The Court should grant summary judgment because IDPF's license from OverDrive immunizes it (and MIT as its authorized sublicensee) against OverDrive's copyright allegations.

### A. OverDrive Waived Direct Infringement

OverDrive admits that the IP Policy grants IDPF a license under any copyrights OverDrive may have in its alleged contributions. (Cmplt., ECF # 1, ¶¶ 23, 34). The burden therefore falls on OverDrive to establish that the IP Policy affirmatively prohibits IDPF's proposed transfer of its own copyrights to MIT. *See Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) ("[I]n cases where only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized.").

Section 3 of the IP Policy license, under which OverDrive (as a "Member") granted to IDPF, provides:

> Member hereby grants to the IDPF a worldwide, perpetual, irrevocable, non-exclusive, sub-licensable license under any copyrights in Members' and Representatives' Contributions included in all Specifications to reproduce, adapt, distribute, perform, display, and create derivative works of such Contributions in connection with the Specification (including any successor thereof); provided, however, that the license granted herein does not grant any rights with respect to any underlying software or other technologies.

(IP Policy § 3.) This license waives direct infringement because it covers every exclusive right granted under Section 106. *Compare id. with* 17 U.S.C. § 106. Moreover, the IP Policy specifically contemplates IDPF assigning its assets upon its dissolution. (*Id.* at § 1.4.) OverDrive therefore cannot prove that IDPF's alleged infringement was unauthorized.

### B. OverDrive Waived Contributory Infringement

The IP Policy also disposes of OverDrive's contributory infringement allegations. To establish contributory infringement, OverDrive must prove (1) direct infringement by MIT and (2) that IDPF intentionally induced or encouraged that direct infringement. *See Grokster,* 545 U.S. at 930. OverDrive cannot prove direct infringement by MIT because IDPF sublicensed MIT under all of its rights in and to the IP Policy license.

The IP Policy unconditionally permits sublicensing. (IP Policy § 3.) Exercising that right, IDPF in the Membership Exchange Agreement granted MIT "a royalty-free license to use the IDPF IP, including EPUB 3.1." (Membership Exchange Agreement § 3(b)(4).) The Specification License Agreement more fully articulates MIT's sublicense, as follows:

> 3. License. IDPF hereby grants to MIT, as a host of W3C, a worldwide, perpetual, irrevocable, non-exclusive, and sublicensable license to reproduce, adapt, distribute, perform, display and create derivative works under all of IDPF's rights in and to the Specification, including:
>
> > (a) all of IDPF's copyrights in and to the Specification, including all collective work copyrights with respect to each Specification as a whole;
> >
> > (b) all of IDPF's rights and privileges under 17 U.S.C. § 201(c) to reproduce and distribute contributions to the Specifications; and
> >
> > (c) all of IDPF's sublicensable rights with respect to any copyrights in Members' and Representatives' Contributions licensed to IDPF under Section 3 of the IP Policy.

(Specification License Agreement at § 3.) IDPF's sublicense to MIT constitutes a complete defense to any direct infringement by MIT for which IDPF could be contributorily liable because it too encompasses every exclusive right conferred under Section 106. OverDrive therefore cannot sustain its contributory infringement allegations, either.

### C.  Whether Infringement Might Occur In The Future Is Not Ripe And OverDrive Waived Any Future Infringement By MIT

To the extent OverDrive asserts that copyright infringement will occur once IDPF dissolves, that issue is not yet ripe, and declaratory jurisdiction does not exist, because there is no present "case of actual controversy" on that issue. 28 U.S.C. § 2201(a).

For declaratory jurisdiction to exist, there "must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth,* 300 US 227, 241 (1937). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Cooley v. Granholm,* 291 F.3d 880, 883–84 (6th Cir. 2002) (quoting *Texas v. United States,* 523 U.S. 296, 300 (1998)). What *might* occur *if* IDPF dissolves is purely hypothetical. MIT could, for example, do nothing with EPUB and there would be no infringement. Or, IDPF might not to dissolve with MIT remaining a sublicensee. Or, something else entirely might happen. Put simply, no one knows. OverDrive's prospective allegations therefore are non-justiciable.

If, however, the Court finds that it has jurisdiction to take up this issue, it should grant summary judgment because, even if OverDrive could establish that MIT *will* in the *future* engage in conduct that could possibly constitute infringement, IDPF may freely assign its license under the IP Policy to MIT, and thus immunize it from infringement, upon dissolution.

Whether a non-exclusive copyright license can be assigned depends on its terms. *See In re Golden Books Family Entm't, Inc.,* 269 B.R. 311, 314 (D. Del. 2001) (copyright owner may authorize assignment of nonexclusive copyright license); *In re Patient Educ. Media, Inc.,* 210 B.R 237, 242-243 (S.D.N.Y 1997) (nonexclusive license may be assigned if license permits assignment). The assignability of a nonexclusive license is a question of state contract law. *See In re Patient Educ. Media,* 210 B.R. at 242. Washington, D.C., law therefore controls whether IDPF can assign its IP Policy license. (IP Policy § 12.2 ("This IP Policy shall be governed by the laws of the District of Columbia (USA), excluding its choice of law rules.").)

Under Washington, D.C., law, "a court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract." *Bragdon v. Twenty–Five Twelve Assocs. Ltd. Partnership,* 856 A.2d 1165, 1170 (D.C. 2004). In developing its IP Policy, IDPF intended to ensure that "another nonprofit would carry forward" its work "in the event the organization cease[d] to exist." (Potash Tr. 208:20-25.) Embodying that intent, Section 1.4 allows IDPF to assign (*i.e.,* "allocate") its license rights to a not-for-profit purpose:

> In the event of the dissolution of IDPF and liquidation of the corporation, the assets remaining from the liquidation shall not be distributed among the Members ... but shall be allocated to a not-for-profit purpose[.]

(IP Policy § 1.4.[4]) That includes IDPF's rights and privileges under Section 3, which are necessary "[t]o ensure that Specifications can be made available to all interested parties without competing copyright claims in the document itself interfering with its publication and distribution." (*Id.* at § 3.) The IP Policy therefore allows IDPF to assign its license rights to MIT, a non-profit organization, upon its dissolution. Since that is what IDPF agreed to do

---

[4] That intent also is embodied in Section 12.3, which requires IDPF's members, but not IDPF, to obtain consent before assigning rights under the IP Policy. (IP Policy § 12.3.)

under Section 3(b) of the Membership Exchange Agreement, the IP Policy waives any future direct infringement by MIT and IDPF is entitled to summary judgment with respect any present liability that OverDrive seeks to impose on that basis.

## V.    IDPF's Allegedly-Infringing Conduct Is Statutorily Privileged

Finally, the Court should grant summary judgment because IDPF's allegedly-infringing conduct is statutorily privileged. Section 201(c) grants a collective work owner—here, IDPF— the "privilege" of reproducing and distributing contributions as a part of a collective work as a whole. 17 U.S.C. § 201(c). IDPF "is thus privileged to reproduce or distribute" OverDrive's alleged contributions to EPUB. *Tasini,* 533 U.S. at 496.

In its prior order, the Court found that "further inquiry is required to determine whether Defendant's compilation of the EPUB specification constitutes the creativity necessary to consider IDPF the collective work author." (Order, ECF # 20, at 9.) With discovery now closed, the record evidence shows conclusively that EPUB as a whole embodies substantial creativity and originality such that IDPF, as the acknowledged collective-work copyright owner, holds a transferrable statutory privilege under 17 U.S.C. § 201(c).

Only a "minimal degree of creativity" is required for copyright protection to subsist in a collective work. *Feist,* 499 U.S. at 345. EPUB easily clears this low bar. EPUB comprises substantial original content authored through the collective efforts and consensus of IDPF's working groups, its board of directors, and its membership. (Kerscher Tr. 75:2-76:16; Conboy Tr. 48:12-17; Potash Tr. 207:15-208:11.) That original content includes, for example, definitions of relationships among different content that can be included within an EPUB publication. (Kerscher Tr. 37:23-40:15.) As another example, the specification morphed into three sub-

specifications with EPUB 3.0: the Open Publication Structure, the Open Publication Format, and the Open Container Format, none of which until then existed in that form. (Conboy Tr. 48:18-50:8.) And finally, by pleading that EPUB is a collective work and registering its claimed copyrights as collective-work contributions, OverDrive admits that EPUB at least meets, if not exceeds, this threshold. OverDrive therefore cannot credibly dispute that EPUB embodies and reflects at least the "minimal degree" of creativity needed for copyright protection.

As the collective-work copyright owner, IDPF holds a statutory privilege to reproduce and distribute OverDrive's claimed contributions to EPUB. *See* 17 U.S.C. § 201(c). As such, IDPF is immune to OverDrive's direct infringement allegations. Moreover, IDPF's privilege is freely transferrable to MIT. *See Faulkner v. National Geographic Enterprises Inc.,* 409 F.3d 26, 39-40 (2d Cir. 2005) (affirming summary judgment that section 201(c) defeats direct and contributory infringement and that owner of collective work copyright may transfer 201(c) privileges). OverDrive thus cannot establish that IDPF will directly infringe or that MIT will engage in any direct infringement for which IDPF could be contributorily liable, either now or (assuming the Court has jurisdiction to adjudicate future events) if IDPF dissolves. OverDrive's copyright infringement allegations therefore fail as a matter of law and summary judgment should be granted based on IDPF's Section 201(c) statutory immunity.

## CONCLUSION

For the foregoing reasons, the Court should grant IDPF's motion and enter judgment in its favor on the sole count for declaratory judgment asserted by OverDrive in its complaint.

Respectfully submitted,

Dated: April 9, 2019
/s/ David T. Movius

David T. Movius (0070132)
 *dmovius@mcdonaldhopkins.com*
Mark Guinto (0089320)
 *mguinto@mcdonaldhopkins.com*
McDonald Hopkins LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474

*Attorneys for Open eBook Forum d/b/a*
*International Digital Publishing Forum*

## <u>LOCAL RULE 7.1(F) DECLARATION</u>

I hereby certify that this case has been assigned to the standard track and that the foregoing memorandum complies with the 20-page limit for memoranda relating to dispositive motions in standard-track cases.

_____/s/ David T. Movius_____
*Attorney for Open eBook Forum d/b/a*
*International Digital Publishing Forum*
