UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OVERDRIVE, INC., | Case No.: 1:17 CV 165 |
| Plaintiff | |
| v. | JUDGE SOLOMON OLIVER, JR. |
| THE OPEN EBOOK FORUM, d/b/a/ INTERNATIONAL DIGITAL PUBLISHING FORUM, | |
| Defendant | ORDER |

Currently pending before the court are four motions: Plaintiff's Motion for Summary Judgment (ECF No. 27), Defendant's Motion to File Sur-Reply (ECF No. 53), Defendant's Motion for Summary Judgment (ECF No. 36), and Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 46). For the following reasons, the court denies Plaintiff's Motion for Summary Judgment and Defendant's Motion to File Sur-Reply; but the court grants Defendant's Motion for Summary Judgment and Plaintiff's Motion for Leave to File Sur-Reply.

## I. BACKGROUND

**A.     Facts**

Plaintiff OverDrive, Inc. ("OverDrive" or "Plaintiff"), a leading global platform for eBooks, audiobooks, and other digital media, was a founding member of Defendant Open eBook Forum d/b/a the International Digital Publishing Forum ("IDPF" or "Defendant"), a non-profit trade and standards association for electronic publishing and eBooks. (Complaint ¶¶ 1, 3, 8–9, ECF No. 1.) Along with other members of IDPF, OverDrive developed EPUB, a freely available open specification for

eBooks. (*Id.* ¶¶ 9, 14–22.) EPUB is an industry-leading specification that is "supported by the largest number of publishers, authors, digital book distributors and vendors, hardware readers, reading and learning apps, libraries, and schools." (*Id*. ¶14.) Over the years, more than one hundred separate IDPF members have contributed to the various versions of EPUB. (*Id.* ¶ 11.)

During IDPF's infancy, Plaintiff was its primary host. (Compl. ¶ 12.) Plaintiff housed IDPF's servers at its facility, OverDrive employees coined the name "IDPF," and they initially registered IDPF's domain name. (*Id.* ¶¶ 10, 12.) Plaintiff also asserts that its employees made significant contributions to EPUB's initial conception and design as well as revisions to subsequent iterations, including EPUB 3.0.1, which was published on June 26, 2014. (*Id.* ¶¶ 16–18.)

In 2004, Plaintiff and other IDPF members approved IDPF's Intellectual Property Policy for Members ("IP Policy"). (*Id.* ¶ 23; *see also* IP Policy, ECF No. 28-1.) The IP Policy provides that all "copyrights or other intellectual property owned or created by any Member shall remain the property of that Member." (IP Policy § 1.1, ECF No. 28-1.) However, the IP Policy also grants IDPF a "worldwide, perpetual, irrevocable, non-exclusive, sub-licensable license under any copyrights in Members' and Representatives' Contributions included in all Specifications to reproduce, adapt, distribute, perform, display, and create derivative works of such Contributions in connection with the Specifications (including any successor thereof)." (*Id.* § 3.) Further, the IP Policy states:

> To ensure that Specifications can be made available to all interested parties without competing copyright claims in the document itself interfering with its publication and distribution, Member agrees that IDPF shall be the sole owner of the copyright in the Specification(s).

(*Id.*) In large part, the present lawsuit stems from the parties' disagreement regarding the meaning of these apparently conflicting provisions in the IP Policy.

On September 28, 2016, Defendant entered into a Memorandum of Understanding ("MOU") with W3C, an e-commerce site, through its U.S. host, the Massachusetts Institute of Technology

-2-

("MIT") (collectively, "W3C/MIT"). (Compl. ¶ 28.) The MOU contemplated a Membership Exchange, a two-part transaction (the "MIT-IDPF merger" or the "Merger") involving a disposition of assets, including all of IDPF's intellectual property. (*Id.* ¶¶ 29–31, 34.) On November 28, 2016, IDPF Executive Director Bill McCoy emailed a "submission authorization form" to all IDPF members requesting that EPUB contributors grant W3C/MIT a perpetual, non-exclusive license in their copyrighted contributions to EPUB. (*Id.* ¶ 37.) Some IDPF members, including Plaintiff, refused. (*Id.* ¶ 38–39.)

Plaintiff acknowledges that Defendant holds a non-exclusive license by virtue of the IP Policy, but Plaintiff maintains that Defendant does not have legal authority to transfer EPUB to W3C/MIT without consent from all authors who made copyrighted contributions to the specification. (*See* OverDrive Summ. J. Br. at PageID #242–46, ECF No. 28.) OverDrive further alleges that Defendant intends to transfer, or may have already transferred, EPUB to W3C/MIT with the intent that W3C/MIT will exploit the specification through further development. (Complaint ¶ 36, ECF No. 1.) Indeed, a new version of EPUB now exists, complete with W3C/MIT branding. (*See* OverDrive Resp. at PageID #703 & n.15, ECF No. 40.)

**B.      Procedural History**

OverDrive filed this civil action on January 24, 2017, for declaratory judgment pursuant to 28 U.S.C. § 2201. In its Complaint, Plaintiff alleges claims against IDPF for direct and contributory copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* (Compl. ¶¶ 4, 14, 18, ECF No. 1.) Plaintiff asks the court to: (1) issue a declaratory judgment stating that W3C/MIT is not entitled to use Plaintiff's copyrighted EPUB contributions without consent; (2) award damages for any infringement that may have already occurred; and (3) enjoin Defendant and W3C/MIT from further exploitation of Plaintiff's copyrighted EPUB contributions. (*Id.* ¶¶ (A)–(D).) In a nod to other

IDPF members that similarly refused to extend a license to W3C/MIT, OverDrive noted that "[s]imilarly-situated parties may seek to join this action or decide to file individual actions."[1] (*Id.* at PageID #3, *see also id.* ¶ 39.)

In April 2017, IDPF filed a motion for judgment on the pleadings arguing that (1) it holds a statutory privilege to distribute EPUB under 17 U.S.C. § 201(c) because it is the collective work owner and (2) it has authority to transfer EPUB pursuant to the sub-licensing provision in § 3 of the IP Policy. (Mot. J. Pleadings, ECF No. 16.) The court denied this motion. (Order of Dec. 5, ECF No. 20.) In its Order, the court explained that the IP Policy—specifically, the language identifying IDPF as the sole owner of the copyright in EPUB—"is not dispositive of the ownership status of the EPUB specifications." (*Id.* at PageID #178.) Further, the court determined that OverDrive had plausibly alleged that the MIT-IDPF merger constitutes a "transfer or assignment of the EPUB specifications that exceeds the scope of IDPF's license" rather than a "sublicense or distribution," as IDPF claimed. (*Id.* PageID #180–81.)

The parties then cross-moved for summary judgment. (ECF Nos. 27, 36.) After they filed their respective responses and replies, they both sought leave to file sur-replies (ECF Nos. 46, 53) asserting that the other party impermissibly raised new arguments for the first time in their replies.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] For example, OverDrive points out that "Microsoft Corporation . . . did not sign the EPUB Submission" that would have granted a license to W3C/MIT. (OverDrive Summ. J. Br. at PageID #240, ECF No. 28.) The court notes, however, that despite OverDrive's invitation, no other party joined this lawsuit. Nor, to the court's knowledge, has any similarly situated IDPF member filed a separate lawsuit.

>entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

>(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the

-5-

nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4). Moreover, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted)).

### III. LAW AND ANALYSIS

**A.     Plaintiff's Summary Judgment Motion**

OverDrive's Motion for Summary Judgment seeks (1) a declaration that "a transfer of the EPUB copyrights as contemplated by Defendant in the Membership Asset and Transfer Agreement would be invalid" and (2) an injunction prohibiting IDPF from transferring EPUB without OverDrive's consent. (OverDrive Summ. J. Br. at PageID #242, 251, ECF No. 28; *see also* OverDrive Reply at PageID #978, ECF No. 52.) In support, OverDrive argues that, because its employees made copyrightable contributions to EPUB, it holds copyrights in EPUB under the work made for hire doctrine. (OverDrive Summ. J. Br. at PageID #242–43, ECF No. 28.) Accordingly, OverDrive claims that 17 U.S.C. § 204(a) prohibits IDPF from transferring EPUB to W3C/MIT because OverDrive and other contributing authors never gave written consent to allow such a

transfer.[2] (*Id.*) In addition, OverDrive maintains that IDPF has no copyrights of its own because IDPF made no independent, creative contributions to EPUB. (*Id.* at PageID #247–50.)

Notably, however, OverDrive now admits that the licensing agreement in the IP Policy covers IDPF and W3C/MIT. (*See* OverDrive Resp. at PageID #709–11, ECF No. 40.) Despite its prior arguments to the contrary,[3] OverDrive acknowledges that "IDPF has the right to sublicense OverDrive's rights [pursuant to the IP Policy], and IDPF did sublicense them to MIT vis-à-vis the Membership Exchange and Asset Transfer Agreement." (*Id.* at PageID #709.) Accordingly, there is no infringement currently happening, and there can be no infringement until IDPF ceases to exist or transfers EPUB.[4] (*Id.* at PageID #709–11.)

IDPF responds with three primary arguments: First, OverDrive lacks standing because IDPF and W3C/MIT have not yet committed copyright infringement. (IDPF Resp. at PageID #905–08, ECF No. 47.) Second, OverDrive failed to identify any copyrightable contributions it made to EPUB. (*Id.* at PageID #908.) Finally, even assuming OverDrive holds copyrights in EPUB, IDPF asserts that the MIT-IDPF Merger cannot violate § 204(a) because the proposed transfer "applies *only* to 'the intellectual property *of IDPF*,' and only then to the 'extent that IDPF has a right to convey such assets.'" (*Id.* at PageID #917.) In other words, IDPF says its agreement with W3C/MIT is a quitclaim. (*Id.*)

---

[2] Under 17 U.S.C. § 204(a), "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

[3] OverDrive alleged current, ongoing copyright infringement in its Complaint (ECF No. 1) and its Opposition (ECF No. 18) to judgment on the pleadings.

[4] In OverDrive's view, such a transfer would terminate the license IDPF holds pursuant to the IP Policy. (OverDrive Resp. at PageID #709–11, ECF No. 40.) The court does not decide that issue here.

The court addresses these issues below, starting with the question of standing and then turning to the parties' arguments regarding the nature of OverDrive's copyright ownership and the MIT-IDPF Merger.

1. Standing

Article III of the Constitution limits the federal judicial power to "cases and controversies." U.S. Const. art. III, § 2, cl. 1. The Sixth Circuit has explained there is no case or controversy "when [a claim] is filed too early (making it unripe), when it is filed too late (making it moot) or when the claimant lacks a sufficiently concrete and redressable interest in the dispute (depriving the plaintiff of standing)." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008). These justiciability doctrines are distinct, but "[t]here is unquestionably some overlap between ripeness and standing." *Airline Prof'ls Ass'n of Int'l Bhd. of Teamster's v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003).

According to IDPF, OverDrive lacks standing for two reasons. First, OverDrive "conceded that no infringement has occurred and that none will occur until IDPF dissolves." (IDPF Resp. at PageID #907, ECF No. 47.) Absent present infringement, IDPF argues, there is no Article III case or controversy for the court to decide. Alternatively, IDPF asserts that OverDrive falls outside § 204(a)'s zone of interest because OverDrive is not a party to the MIT-IDPF Merger. (*Id.* at PageID #907–08.) Neither argument is persuasive.

IDPF's first argument fails because it conflates standing with ripeness. OverDrive's concession that IDPF and W3C/MIT have not and are not infringing its copyrights is fatal to its claim for present direct or contributory infringement. (*See* OverDrive Resp. at PageID #709–11, ECF No. 40; Compl. ¶¶ 48–55, ECF No. 1.). Yet this admission does not eviscerate standing because OverDrive undoubtedly has a concrete, particularized, and redressable interest in asserting its copyrights and preventing infringement of them. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

-8-

560–61 (1992); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 752 (6th Cir. 2018). Nonetheless, IDPF is correct that there is a justiciability issue—not due to standing but because OverDrive's claims are unripe. The court addresses this ripeness issue in more detail below.

The second argument also fails. Section 204(a)'s purpose "is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." (IDPF Resp. at PageID #907, ECF No. 47 (quoting *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995).) Based on this language, IDPF argues that OverDrive lacks standing under § 204(a) because it is not a party to the MIT-IDPF Merger. But IDPF's interpretation is incorrect and unsupported by the cases it cites. As those courts explained, where one party transfers a copyright to another party, § 204(a) does not afford standing to a third-party *infringer* trying to *avoid* liability. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 593 (7th Cir. 2003); *Imperial Residential Design*, 70 F.3d at 99. That is not the scenario here, where OverDrive asserts ownership of its own copyrights to prevent an allegedly invalid transfer.

Accordingly, the court finds IDPF's standing arguments unavailing.

2. OverDrive's Copyrightable Contributions to EPUB

Turning to the merits, OverDrive argues that it holds copyrights in EPUB because (1) its employees made copyrightable contributions throughout EPUB's development and (2) the U.S. Copyright Office granted Certificates of Registration for OverDrive's contributions to various versions of the EPUB specification. (OverDrive Summ. J. Br. at PageID # 242–43; *see also* Ex. J, ECF No. 20-10.) The court analyzes these arguments, and IDPF's responses, in turn.

### *i. Employees*

As to the first argument, OverDrive claims that three different employees contributed to EPUB: Steve Potash, Alexis Petric-Black, and Dorothea Salo. Specifically, OverDrive asserts that, among other contributions, Potash participated in writing sessions and arranged and selected content for the first version of EPUB; Petric-Black contributed words, sentences, and concepts to later EPUB versions; and Salo served as a technical writer, or "scribe," during EPUB writing sessions. (*Id.* at PageID #235–39.) OverDrive also notes that IDPF included Potash and Petric-Black on the official list of EPUB's authors and that OverDrive received a certificate from the U.S. Department of Commerce commemorating its contributions to the first version of EPUB. (*Id.* at PageID #236; OverDrive Reply at PageID #986, ECF No. 52.)

IDPF does not refute that OverDrive's employees participated in EPUB's development. However, IDPF argues that OverDrive fails to identify any copyrightable contributions that its employees made. To own copyrights in a collective work, an author must contribute a "separate and independent" work that is part of the larger whole. 17 U.S.C. § 101 (defining "collective work"); *see also New York Times Co. v. Tasini*, 533 U.S. 483, 496 (2001). Thus, because OverDrive asserts that EPUB is a collective work, it has copyrights only to the extent it identifies separate and independent contributions that its employees made to the specification. *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 257 (2d Cir. 2015) ("The requirement that contributions be 'separate and independent' in order to obtain their own copyright protection also indicates that inseparable contributions integrated into a single work cannot separately obtain such protection."). And according to IDPF, OverDrive "did not—and . . . cannot—point to even one specifically-identifiable 'separate and independent' contribution by any of its employees." (IDPF Resp. at PageID #909–10, ECF No. 47.) IDPF also dismisses Potash's and Petric-Black's inclusion on the list of EPUB's authors, claiming that the "list

merely identifies those who 'were present' during" EPUB's creation, not those "who actually wrote it." (*Id.* at PageID #911.) Finally, IDPF says the certificate Potash received from the Department of Commerce is, "both figuratively and literally, a participation award." (*Id.*)

The court finds IDPF's argument well-taken. Despite OverDrive's claims to the contrary, the record does not establish that OverDrive made any copyrightable contributions to EPUB or what those contributions were. While it is clear that OverDrive and its employees were intimately involved in the development and creation of EPUB *generally*, that does not prove OverDrive made separate and independent contributions to EPUB as a collective work.

One of OverDrive's employees explained that EPUB's development occurred in a "very strange environment of multiple, authorial collaborations," in which "the working group collectively made decisions about what made it into EPUB." (OverDrive Reply at PageID #985 nn. 13, 14.) The employee further admitted that "there wasn't necessarily at any one point in time a single person authoring anything." (IDPF Resp. at PageID #913, ECF No. 47.) These statements, combined with the lack of evidence regarding any copyrightable contribution OverDrive made, could be interpreted to suggest that EPUB is a joint work rather than a collective work. *See* 17 U.S.C. § 101 (defining "joint work" and "collective work"). But OverDrive emphatically denies that EPUB is a joint work.[5] (*See* OverDrive Reply at PageID #986–987 & n.15, ECF No. 52.)

Assuming EPUB is a collective work, as OverDrive asserts, the court cannot conclusively determine what, if any, separate and independent contributions OverDrive made to EPUB. But

---

[5] This is unsurprising because OverDrive's claim would be significantly undermined if EPUB is instead considered a joint work. *See Brownstein v. Lindsay*, 742 F.3d 55, 68 (3d Cir. 2014) ("As with tenants in common of real property, a co-author can transfer or assign the rights to his ownership interest in the joint work, but this does not affect the ownership rights of his co-author."). If EPUB is a joint work, IDPF asserts it can, "as a co-author and co-owner . . . freely assign its undivided non-exclusive co-ownership rights to MIT." (IDPF Reply at PageID #852, ECF No. 45.)

-11-

neither can the court conclude that OverDrive did not make any copyrightable contributions. Because genuine disputes of material fact remain, OverDrive is not entitled to summary judgment.

### ii. *Copyright Registration*

For the sake of completeness, the court also addresses OverDrive's assertion that the certificates of registration it received from the U.S. Copyright Office establish "*prima facie* evidence of the validity of" its copyrights under 17 U.S.C. § 410(c). (OverDrive Summ. J. Br. at PageID #243, ECF No. 28.) As § 410(c) makes clear, district courts have discretion regarding what evidentiary weight to give copyright registrations. 17 U.S.C. § 410(c). Here, the court finds OverDrive's certificates insufficient for the same reason OverDrive's other arguments fail: it has not provided evidence identifying any separate copyrightable contributions it made to EPUB. *See Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 510, 520–21 (6th Cir. 2014) (affirming district court finding that, despite obtaining federal copyright registration, plaintiff failed to show sufficient evidence of original contributions subject to copyright). The certificates of registration contain only a vague statement that OverDrive's copyrights extend to "text, text contributed by the claimant to this collective work." (Ex. J, ECF No. 28-10.) Without more specificity, and given all the other evidence in the record, these certificates do not quell the genuine disputes of material fact regarding the nature and extent of OverDrive's asserted copyrights.

### 3. Quitclaim

There is no need to deeply analyze IDPF's quitclaim argument because OverDrive's Motion for Summary Judgment fails in any event. The court does note, however, that the documents defining and describing the MIT-IDPF Merger and the announcements IDPF made to its members do not use specific quitclaim language. Further, the arguments IDPF presents and the manner in which it has

litigated this case arguably suggest that IDPF seeks to transfer more than a quitclaim. (*See* OverDrive Reply at PageID #978–83, ECF No. 52.)

Regardless, the court need not and does not rule on this issue. Assuming without deciding, if the Merger contemplates nothing more than IDPF conveying a quitclaim, as IDPF claims, then the transaction does not impact OverDrive's intellectual property rights at all. In that case, the transaction does not run afoul of § 204(a) because IDPF would transfer *only its own rights*, whatever those may be, and, therefore, OverDrive would not be entitled to summary judgment. But if IDPF instead seeks to transfer EPUB as a whole, including copyrighted contributions from other authors, then § 204(a) requires IDPF to obtain written consent from those contributors. But, as discussed above, genuine disputes of material fact exist regarding OverDrive's copyright ownership. So even if the MIT-IDPF Merger is structured precisely as OverDrive alleges, in that case, too, summary judgment for OverDrive would be inappropriate.

Consequently, Plaintiff's Motion for Summary Judgment (ECF No. 27) is denied.

**B.      Defendant's Summary Judgment Motion**

IDPF asserts that it is entitled to summary judgment because (1) IDPF cannot, as a matter of law, commit copyright infringement by transferring its own copyrights; (2) OverDrive has not established a copyrightable interest in EPUB; (3) the IP Policy defeats OverDrive's claim for present infringement, and allegations regarding infringement that may occur in the future are not ripe for review; and (4) as the collective work owner, IDPF has a statutory privilege to reproduce and distribute EPUB in its entirety pursuant to 17 U.S.C. § 201(c). (IDPF Summ. J. Br. at PageID #450–62, ECF No. 37.)

Of course, OverDrive challenges these assertions in its Response. Specifically, OverDrive argues that "[t]he invalid copyright transfer will *cause* OverDrive's exclusive rights under 17

U.S.C. § 106 to be violated by [W3C/MIT] . . . the very day the illicit transfer is effected." (OverDrive Resp. at PageID #701, ECF No. 40.) In addition to the allegedly invalid transfer, OverDrive asserts that "any license OverDrive granted to IDPF terminates the moment IDPF dissolves," which means the sublicense IDPF granted to W3C/MIT also "terminates the day that the EPUB copyrights are transferred to MIT." (*Id.* at PageID #709.) Finally, OverDrive tries to fortify its claim that Potash, Petric-Black, and Salo made copyrightable contributions to EPUB,[6] and it reiterates its position that IDPF made no original contributions deserving of copyright protection. (*Id.* at PageID #704–08, 711–13.)

After considering all of the parties' arguments, the court concludes that IDPF is entitled to summary judgment for two dispositive reasons: First, the undisputed fact that IDPF and W3C/MIT are not currently infringing any copyrights undermines the bulk of OverDrive's claim. Second, to the extent OverDrive alleges future infringement, that claim is not ripe. The court discusses these issues below.

1. Present Infringement

As discussed above, the parties both agree that, as long as IDPF continues to exist as an entity, the licensing agreement in the IP Policy shields IDPF and W3C/MIT against any claim OverDrive may bring for copyright infringement. (*See* OverDrive Resp. at PageID #709–11, ECF

---

[6] The court finds that OverDrive's arguments fail here for the same reasons discussed above: OverDrive does not identify with sufficient specificity any separate and independent work it contributed to EPUB that is subject to copyright. But even to the extent OverDrive did articulate its contributions—for example that "Ms. Petric-Black was clearly 'deciding what to include and what to exclude'" with regard to EPUB's use of metadata, (OverDrive Resp. at PageID #707, ECF No. 40)—these assertions are in substantial tension with Petric-Black's admission that the EPUB working group was a fluid "environment of multiple, authorial collaborations," in which "there wasn't necessarily at any one point in time a single person authoring anything," (IDPF Resp. at PageID #913, ECF No. 47). Thus, at minimum, genuine disputes of material fact remain as to OverDrive's copyrightable contributions.

No. 40; IDPF Reply at PageID #847, ECF No. 45.) Simply put, OverDrive cannot maintain an action for present direct or contributory infringement after conceding that none of its exclusive rights under 17 U.S.C. § 106 have been violated. Accordingly, IDPF is entitled to summary judgment with respect to OverDrive's claim for present copyright infringement.

### 2. Future Infringement and Ripeness

With the bulk of its claim rendered unviable, OverDrive turns its attention to the allegedly invalid transfer of EPUB from IDPF to W3C/MIT and the infringement that is certain to ensue after IDPF makes good on its plan to dissolve. According to OverDrive, "it is clear . . . that W3C contemplates developing EPUB after the invalid transfer is completed," and it is equally clear that IDPF plans to dissolve. (OverDrive Resp. at PageID #703, ECF No. 40.) This imminent threat of future infringement, OverDrive suggests, constitutes a harm within the court's competency to redress. Accordingly, OverDrive urges the court to declare the MIT/IDPF Merger invalid and "not kick this can down the road." (*Id.* at PageID #704.)

However, as IDPF points out, OverDrive's argument overlooks the issue of ripeness. (*See* IDPF Reply at PageID #847–48, ECF No. 45.) This jurisdictional prerequisite serves "to 'avoid[ ] . . . premature adjudication' of legal questions and to prevent courts from 'entangling themselves in abstract' debates that may turn out differently in different settings." *Warshak*, 532 F.3d at 525 (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003)). To determine whether a claim is ripe, courts ask two questions: "(1) is the claim 'fit[ ] . . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding court consideration'?" *Warshak*, 532 F.3d at 525 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

Answering these questions leads to the inescapable conclusion that OverDrive's claim for future copyright infringement is not ripe. First, a claim is not a good "fit" for federal adjudication when it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Here, the parties agree that the alleged future infringement is contingent on IDPF's dissolution. And although it appears highly likely that IDPF will in fact dissolve after merging with W3C/MIT, that has not yet happened; indeed, it is possible that it will never happen. Second, the court finds that withholding consideration will not cause a significant hardship because OverDrive currently is suffering no infringement, and nothing prevents OverDrive from pursuing a renewed infringement action later, if the infringement comes to pass.

Further, the court notes that OverDrive offers no authority in which a court granted declaratory or injunctive relief absent present infringement. OverDrive does cite several cases that involved invalid copyright transfers. *See Sapiano v. Millenium Entm't, LLC*, No. CV 12-8122, 2013 WL 12120262, at *10 (C.D. Cal. Nov. 14, 2013); *Brownstein v. Lindsay*, 742 F.3d 55, 68–69 (3d Cir. 2014). But crucially, every case OverDrive cites for support also involved present copyright infringement. Because OverDrive largely ignores the issue of ripeness and offers no persuasive support for its position, the court concludes that it cannot exercise jurisdiction over OverDrive's claim for future infringement.

Accordingly, the court grants IDPF's Motion for Summary Judgment.

3. Other Arguments

Although the court grants IDPF's Motion for Summary Judgment, it is important to emphasize the limited scope of this Order. For example, as discussed above, the court does not rule on the merits of IDPF's quitclaim argument or its various other arguments that the MIT-IDPF

Merger cannot infringe OverDrive's copyrights as a matter of law. Further, this Order should not be interpreted or construed to suggest in any way that IDPF is the collective work owner of EPUB. In concluding above that genuine disputes of material fact preclude summary judgment for OverDrive, the court in no way addresses or takes a position regarding the nature or extent—or lack thereof—of IDPF's copyright interests in EPUB.

In sum, if IDPF dissolves, as OverDrive claims it will, nothing in this Order precludes OverDrive from initiating a new copyright infringement action against IDPF's successor, W3C, MIT, or any other entity. Nor does this Order express any view regarding the merits of such a suit, should OverDrive pursue it.

**C.     Sur-Replies**

Sur-replies generally are disfavored. Reply affidavits or other supporting papers "that respond only to the opposing party's brief are properly filed with the reply brief." *See Key v. Shelby Cty.*, 551 F. App'x 262, 264 (Fed. Cir. 2014) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002)). However, sur-replies may be allowed "when new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated." *See Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003); *see also Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010). Here, both parties seek leave to file a sur-reply because, they argue, the other side raises new arguments in their reply.

IDPF's motion lacks merit. It argues that its sur-reply is appropriate because OverDrive seeks "substantially broader relief [in its Reply] than what it actually requested in its summary judgment motion," and because OverDrive's Reply incorrectly asserts "that IDPF never before argued that its agreement with MIT only calls for it to assign its own—and no one else's—copyrights in EPUB." (Def.'s Mot. to File Sur-Reply at PageID #1008, ECF No. 53.) But the court finds that OverDrive

seeks the same relief throughout its summary judgment filings. Moreover, to the extent OverDrive's Reply discusses whether IDPF intended to convey only a quitclaim, OverDrive merely responds to the arguments IDPF makes in its Response. Thus, the arguments in OverDrive's Reply are not "new" in the sense warranting a sur-reply. Accordingly, the court denies IDPF's Motion to File Sur-Reply (ECF No. 53) and declines to consider the arguments IDPF raises therein.

By contrast, OverDrive's Motion for Leave to File a Sur-Reply is well-taken. As OverDrive points out, IDPF raises two arguments in its Reply that do not appear in IDPF's earlier filings. Specifically, IDPF's Reply asserts for the first time that (1) it holds copyright in EPUB as a whole under the work made for hire doctrine and (2) its IP Policy constitutes a valid assignment of the EPUB copyright. OverDrive's ability to respond to these newly raised arguments is vitiated absent a sur-reply. Further, OverDrive properly "limits its arguments only to the issues raised for the first time in IDPF's Reply Brief." (OverDrive Mot. to file Sur-Reply at PageID #883, ECF No. 46.) Consequently, the court grants OverDrive's Motion for Leave to File a Sur-Reply (ECF No. 46) and, as discussed above, the court considers the arguments contained therein.

## IV. CONCLUSION

For the foregoing reasons, the court denies Plaintiff's Motion for Summary Judgment (ECF No. 27) and Defendant's Motion to File Sur-Reply in Opposition (ECF No. 53); but the court grants Defendant's Motion for Summary Judgment (ECF No. 36) and Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 46).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

March 30, 2020